## CHRISTOFFEL *v.* UNITED STATES.

No. 528.   Argued April 20, 1949.—Decided June 27, 1949.

*O. John Rogge* argued the cause and filed a brief for petitioner.

*Assistant Attorney General Campbell* argued the cause for the United States.   With him on the brief were *Solicitor General Perlman, Robert S. Erdahl, Harold D. Cohen* and *Philip R. Monahan.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

In March of 1947, the Committee on Education and Labor was, as it is now, a standing committee of the House of Representatives.[1] During the first session of the 80th Congress it held frequent hearings on proposed amendments to the National Labor Relations Act. On March 1, 1947, petitioner appeared as a witness before the committee, under oath, and in the course of the proceedings was asked a series of questions directed to his political affiliations and associations. In his answers he unequivocally denied that he was a Communist or that he endorsed, supported or participated in Communist programs. As a result of these answers he was indicted for perjury under § 22–2501 of the District of Columbia Code,[2] and after a trial by jury was convicted. The Court of Appeals affirmed the conviction, 84 U. S. App. D. C. 132, 171 F. 2d 1004, and we granted certiorari to review its validity. 336 U. S. 934.

No question is raised as to the relevancy or propriety of the questions asked. Petitioner's main contention is that the committee was not a "competent tribunal" within the meaning of the statute, in that a quorum of

---

[1] Legislative Reorganization Act of 1946, 60 Stat. 812, § 121; Rule X, House of Representatives; H. R. Res. No. 111, 80th Cong., 1st Sess., adopted Feb. 26, 1947 (93 Cong. Rec. 1457).

[2] "§ 22–2501 . . . . Perjury—Subornation of perjury. Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath or affirmation states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years. . . ." 31 Stat. 1329.

the committee was not present at the time of the incident on which the indictment was based. As to this, the record reveals the following: the Committee on Education and Labor consists of twenty-five members, of whom thirteen constitute a quorum. At the commencement of the afternoon session on Saturday, March 1, 1947, shortly after two o'clock, a roll call showed that fourteen members were present. Petitioner's testimony started some time after four o'clock. The responses said to constitute offenses were given just prior to five p. m.

Evidence was adduced at the trial from which a jury might have concluded that at the time of the allegedly perjurious answers less than a quorum—as few as six— of the committee were in attendance. Counsel for the petitioner contended vigorously at the trial, on appeal and in this Court that unless a quorum were found to be actually present when the crucial questions were asked, the statutory requirement of a competent tribunal was not met and that absent such a finding a verdict of acquittal should follow.

The trial court agreed that the presence of a quorum was an indispensable part of the offense charged, and instructed the jury that to find the defendant guilty they had to find beyond a reasonable doubt "That the defendant Christoffel appeared before a quorum of at least thirteen members of the said Committee," and that "at least that number must have been actually and physically present . . . . If such a Committee so met, that is, if 13 members did meet at the beginning of the afternoon session of March 1, 1947, and thereafter during the progress of the hearing some of them left temporarily or otherwise and no question was raised as to the lack of a quorum, then the fact that the majority did not remain there would not affect, for the purposes of this case, the existence of that Committee as a competent tribunal provided that before the oath was administered

and before the testimony of the defendant was given there were present as many as 13 members of that Committee at the beginning of the afternoon session. . . ."

This charge is objected to insofar as it allows the jury to find a quorum present simply by finding that thirteen or more members were in attendance when the committee was convened, without reference to subsequent facts.

The Constitution of the United States provides that "Each House may determine the Rules of its Proceedings," Art. I, § 5, Cl. 2, and we find that the subject of competency, both of the House as a whole and of its committees, has been a matter of careful consideration. Rule XI (2) (f) of the House of Representatives reads in part, "The rules of the House are hereby made the rules of its standing committees so far as applicable . . . ." Rule XV of the House provides for a call of the House if a quorum is not present, and it has been held under this rule that such a call, or a motion to adjourn, is the only business that may be transacted in the absence of a quorum. IV Hind's Precedents § 2950; *id.* § 2988. See *id.* §§ 2934, 2939; VI Cannon's Precedents § 653; *id.* § 680. It appears to us plain that even the most highly privileged business must be suspended in the absence of a quorum in the House itself.

A similar situation obtains in the committees.[3] The Legislative Reorganization Act of 1946, 60 Stat. 812, 831, provides, referring to the standing committees, in § 133 (d), "No measure or recommendation shall be reported from any such committee unless a majority of the commit-

---

[3] There is some difference between procedure in the full House and in its committees. In the former, business is transacted on the assumption that a quorum is present at all times, unless a roll call or a division indicate the contrary. In committee meetings, however, the presence of a quorum must be affirmatively shown before the committee is deemed to be legally met. VIII Cannon's Precedents § 2222.

tee were actually present." The rule embodied in this subsection was effective as long ago as 1918 to keep off the floor of the House a bill from a committee attended by less than a quorum, even though no objection was raised in the committee meeting itself. It appeared that the situation in the committee was much like the one with which we are concerned, with members coming and going during the meeting. No point of no quorum was raised at the committee meeting. When the Chairman proposed in the House to bring up the bill considered in the meeting, the Speaker ruled, on objection being made from the floor, that in spite of the point's not having been raised in committee, the bill could not be reported. The absence of a quorum of the committee, though at the time unobjected to, had made effective action impossible. VIII Cannon's Precedents § 2212. Witnesses in committee hearings cannot be required to be familiar with the complications of parliamentary practice. Even if they are, the power to raise a point of no quorum appears to be limited to members of the committee. We have no doubt that if a member of the committee had raised a point of no quorum and a count had revealed the presence of less than a majority, proceedings would have been suspended until the deficiency should be supplied. In a criminal case affecting the rights of one not a member, the occasion of trial is an appropriate one for petitioner to raise the question.

Congressional practice in the transaction of ordinary legislative business is of course none of our concern, and by the same token the considerations which may lead Congress as a matter of legislative practice to treat as valid the conduct of its committees do not control the issue before us. The question is neither what rules Congress may establish for its own governance, nor whether presumptions of continuity may protect the validity of its legislative conduct. The question is rather what rules

the House has established and whether they have been followed. It of course has the power to define what tribunal is competent to exact testimony and the conditions that establish its competency to do so. The heart of this case is that by the charge that was given it the jury was allowed to assume that the conditions of competency were satisfied even though the basis in fact was not established and in face of a possible finding that the facts contradicted the assumption.

We are measuring a conviction of crime by the statute which defined it. As a consequence of this conviction, petitioner was sentenced to imprisonment for a term of from two to six years. An essential part of a procedure which can be said fairly to inflict such a punishment is that all the elements of the crime charged shall be proved beyond a reasonable doubt. An element of the crime charged in the instant indictment is the presence of a competent tribunal, and the trial court properly so instructed the jury. The House insists that to be such a tribunal a committee must consist of a quorum, and we agree with the trial court's charge that, to convict, the jury had to be satisfied beyond a reasonable doubt that there were "actually and physically present" a majority of the committee.[4]

---

[4] In *Meyers* v. *United States*, 84 U. S. App. D. C. 101, 171 F. 2d 800, the appellant made contentions similar to those of petitioner. The Court of Appeals for the District of Columbia Circuit held the same view expressed here. "On October 6, 1947, however, only two senators were present at the hearing. Since they were a minority of the subcommittee, they could not legally function except to adjourn. For that reason, the testimony of Lamarre given on that day cannot be considered as perjury nor can appellant be convicted of suborning it." 84 U. S. App. D. C. at 112, 171 F. 2d at 811. The conviction was affirmed on the ground that all the perjurious statements alleged in the indictment were made on October 4, when a quorum was present. 84 U. S. App. D. C. at 113, 171 F. 2d at 812.

Then to charge, however, that such requirement is satisfied by a finding that there was a majority present two or three hours before the defendant offered his testimony, in the face of evidence indicating the contrary, is to rule as a matter of law that a quorum need not be present when the offense is committed. This not only seems to us contrary to the rules and practice of the Congress but denies petitioner a fundamental right. That right is that he be convicted of crime only on proof of all the elements of the crime charged against him. A tribunal that is not competent is no tribunal, and it is unthinkable that such a body can be the instrument of criminal conviction. The Court of Appeals erred in affirming so much of the instructions to the jury as allowed them to find a quorum present without reference to the facts at the time of the alleged perjurious testimony, and its judgment is reversed.

*Reversed.*

MR. JUSTICE JACKSON, dissenting.

THE CHIEF JUSTICE, MR. JUSTICE REED, MR. JUSTICE BURTON and I think the Court is denying to the records of the Congress and its Committees the credit and effect to which they are entitled, quite contrary to all recognized parliamentary rules, our previous decisions, and the Constitution itself.

No one questions that the competency of a Committee of either House of Congress depends upon the action of the House in constituting the Committee, and in determining the rules governing its procedure. Nor does any one deny that each House has the power to provide expressly that a majority of the entire membership of any of its Committees shall constitute a quorum for certain purposes, and that for other purposes a different number shall be sufficient. For example, either House may provide expressly that, for the purpose of convening a session of a Com-

mittee or of approving a report, a majority of the Committee's entire membership shall be necessary; and that, for the purpose of taking sworn testimony, one or more Committee members shall be sufficient to constitute a quorum. Similarly, each House may spell out a formal rule that a Committee shall constitute a competent tribunal to take sworn testimony if a majority of its members shall be present at the beginning of the session at which the testimony is taken, and that such competency shall continue although the attendance of Committee members may drop, during the Committee's session, to some smaller number. The reasonableness of such a rule is apparent because the value of the testimony taken by such a Committee is measured not so much by the number of people who hear it spoken at the session as it is by the number and identity of those who read it later.

But what Congress may do by express rule it may do also by its custom and practice. There is no requirement, constitutional or otherwise, that its body of parliamentary law must be recorded in order to be authoritative. In the absence of objection raised at the time, and in the absence of any showing of a rule, practice or custom to the contrary, this Court has the duty to presume that the conduct of a Congressional Committee, in its usual course of business, conforms to both the written and unwritten rules of the House which created it. "Each House may determine the Rules of its Proceedings, . . . ." Art. I, § 5, cl. 2. This Court accordingly can neither determine the rules for either House of Congress nor require those rules to be expressed with any degree of explicitness other than that chosen by the respective Houses.

The record shows a quorum of this Committee present when the session began, and neither Christoffel nor anyone else had raised the point of no quorum up to the time he gave false testimony. On trial for perjury he introduced oral testimony tending to show that, at the moment

he so testified, less than a quorum were actually present. The trial court charged that, in the absence of challenge or proof to the contrary, the quorum established at the beginning of the session is presumed to continue and the jury could find Christoffel guilty of perjury if he gave false testimony before such a body. He was found guilty. The Court now holds the charge was erroneous and that, if the Government cannot show positively that there was a quorum present when he falsified, the Committee was not a "competent tribunal" within the Perjury Statute of the District and his conviction thereunder is invalid.

Thus the issue is not whether a quorum is required in order for the Committee to be a competent tribunal, but whether committee rules, practices and records, and congressional rules, practices and records in analogous situations, are subject to attack by later oral testimony and to invalidation by the courts.

All the parliamentary authorities, including those cited by the Court, agree that a quorum is required for action, other than adjournment, by any parliamentary body; and they agree that the customary law of such bodies is that, the presence of a quorum having been ascertained and recorded at the beginning of a session, that record stands unless and until the point of no quorum is raised. This is the universal practice. If it were otherwise, repeated useless roll calls would be necessary before every action.

In this case, therefore, the record on the subject of quorum was entitled to full credit. Christoffel himself did not, during his testimony, raise the question of no quorum. Whether one not a member of the body would have been permitted to do so and what effect it would have, had he been refused, we need not decide. The fact is, he made no effort to raise the point. To have then even suggested the objection would have given opportunity to the Committee to correct it. And if there were not enough committee members present to make a

legal body, he would be at liberty, if his objection were overruled, to walk out. Instead, he chose to falsify to the Committee and now says that, despite the record, he should be allowed to prove that not enough members were present for his lie to be legal perjury. The Court agrees and holds that the House Rules requiring a quorum for action require this result. Since the constitutional provision governing the House itself also requires a quorum before that body can do business, this raises the question whether the decision now announced will also apply to the House itself. If it does, it could have the effect of invalidating any action taken or legislation passed without a record vote, which represents a large proportion of the business done by both House and Senate. The effect is illustrated by noting that such a rule would make possible the invalidation of not only this conviction for perjury, but the Perjury Act[1] itself, as well as the Judicial Code,[2] which is now the source of this Court's authority to review the conviction. Moreover, this rule is in direct contravention of the Constitution, which does not require either House or Senate, much less a Committee, to take a record vote except[3] "at the Desire of one fifth of those Present." Art. I, § 5, cl. 3.

The Court significantly omits citation of any prior decision in support of its present conclusion.[4] The reason

---

[1] Passed without record vote by the Senate, 34 Cong. Rec., Pt. 4, pp. 3496–97, and by the House without a record vote, 34 Cong. Rec., Pt. 4, p. 3586.

[2] Passed by the Senate without a record vote, 94 Cong. Rec., Pt. 6, p. 7930, and motion to reconsider withdrawn, 94 Cong. Rec., Pt. 7, p. 8297. Passed by the House without a record vote, 94 Cong. Rec., Pt. 7, p. 8501.

[3] A separate provision requires a record vote on the question of overriding a Presidential veto. Art. I, § 7, cl. 2.

[4] This is not because others have not tried to raise the issue. In *Meyers* v. *United States*, 84 U. S. App. D. C. 101, 171 F. 2d 800, certiorari denied 336 U. S. 912, the petitioner was convicted of subornation of perjury committed before a Committee of Congress on two

is fairly clear—the others are inconsistent with this one. For example, in *United States* v. *Ballin,* 144 U. S. 1, we held it to be within the competency of the House to prescribe any method reasonably certain to ascertain the

---

separate days—October 4 and October 6. The conviction was allowed to stand despite a charge to the jury that the quorum on October 4 was presumed to continue unless and until a committee member raised the point of no quorum, and that false testimony given before the point is raised is perjurious under this same statute. That charge is practically identical with the charge given in this case, of which this Court now says: "The heart of this case is that by the charge that was given it the jury was allowed to assume that the conditions of competency were satisfied even though the basis in fact was not established and in face of a possible finding that the facts contradicted the assumption." This perfectly describes the *Meyers* case, considering only the October 4th testimony, on which it is said the conviction rested. Considering only that part of each count, Meyers was convicted and is now imprisoned for suborning perjury given under identical conditions as did Christoffel; and Meyers' guilt was determined by a jury which received the same ruling the Court now holds to be error as applied to Christoffel. Yet the Meyers conviction was affirmed and we denied his plea for review. Such a denial here of course does not imply approval of the law announced below but, on the undisputed facts, Meyers' conviction rests on a basis which this Court says is "unthinkable" as to Christoffel, whose conviction is reversed.

Moreover, the Meyers jury was permitted to convict, partly at least, on the basis of testimony given before a Committee on October 6 when the *committee records showed, and the Government admits, that no quorum was present at any time.* Today's opinion is diametrically opposed to the Meyers conviction based on the October 4th testimony alone, but the Meyers conviction also rests in part on testimony before a body which demonstrably and admittedly *never* amounted to a quorum, while Christoffel's is reversed merely because the charge permitted the jury to ignore oral testimony "indicating" that a quorum once admittedly established may have evaporated. I do not see how the Court can justify such discrimination. The court below evidently could not, for it relied on the *Meyers* case as a precedent for affirming the conviction of Christoffel on this identical issue. 84 U. S. App. D. C. 132, 133, 171 F. 2d 1004, 1005, n. 1.

fact of a quorum; that the courts are not concerned with the wisdom or advantages of any such rule—"with the courts the question is only one of power." The House has adopted the rule and practice that a quorum once established is presumed to continue unless and until a point of no quorum is raised. By this decision, the Court, in effect, invalidates that rule despite the limitations consistently imposed upon courts where such an issue is tendered. See *Field* v. *Clark,* 143 U. S. 649, 669–673; *United States* v. *Ballin,* 144 U. S. 1, 5; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 143; cf. *Leser* v. *Garnett,* 258 U. S. 130, 137. And see *Coleman* v. *Miller,* 307 U. S. 433, 453–456; and concurring opinions at 307 U. S. 456–460, and 460–470.

We do not think we should devise a new rule for this particular case to extend aid to one who did not raise his objection when it could be met and who has been prejudiced by absence of a quorum only if we assume that, although he told a falsehood to eleven Congressmen, he would have been honest if two more had been present. But in no event should we put out a doctrine by which every Congressional Act or Committee action, and perhaps every judgment here, can be overturned on oral testimony of interested parties.

We should affirm the conviction.