## UNITED STATES v. BRENNAN.
### No. 11805.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 10, 1954.

Decided May 27, 1954.

Petition for Rehearing Denied
June 18, 1954.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellant. Messrs. William J. Peck and William R. Glendon, Asst. U. S. Attys. at the time the record was filed, also entered appearances for appellant.

Mr. George B. Young, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Mr. Thomas V. Lefevre, Washington, D. C., was on the brief, for appellee.

Before CLARK, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Ray Brennan, the appellee, was indicted under 18 U.S.C. § 912 (Supp. 1952), set forth in the margin.[1]

Appellee filed a motion to dismiss, in the course of argument of which the Government advised the District Court that the only evidence it could adduce to support the indictment consisted of unsworn statements made by Brennan before members of the staff of the Senate Special Committee to Investigate Organized Crime in Interstate Commerce. The court held that the use of this evidence was prohibited by 18 U.S.C. § 3486 (Supp. 1952), which reads:

"No testimony given by a witness before either House, or before any committee of either House, or before any joint committee established by a joint or concurrent resolution of the two Houses of Congress, shall be used as evidence in any criminal proceeding against him in any court, except in a prosecution for perjury committed in giving such testimony. But an official paper or record produced by him is not within the said privilege."

The court entered its order granting the motion, and thereafter overruled the Government's motion for rehearing. The United States appeals, as authorized by 18 U.S.C. § 3731 (Supp. 1952).[2]

The circumstances of the making of the statements are not in dispute. The Committee itself at an executive session in Chicago had received testimony from Dan Gilbert, a candidate for the office of Sheriff of Cook County, Illinois. Without the Committee's consent, Brennan, a reporter for the Chicago Sun Times, obtained a transcript of this testimony from the reporting company in Washington. He took it to officials of the Sun Times who published a substantial part of it.

Brennan was suspected of having obtained the transcript by pretending to be an officer or employee acting under the authority of the United States in violation of 18 U.S.C. § 912 (Supp. 1952), n. 1 supra. One of Committee counsel, John L. Burling, telephoned from Washington to counsel for the Sun Times in Chicago.[3] As a result, Brennan came to the office of the Committee in Washington on November 16, 1950, accompanied by Marshall Field, Jr., the newspaper's publisher and editor, Milburn Akers, its executive editor, and counsel. Expressing willingness to have the participants tell Burling what had occurred, their counsel claimed on their behalf immunity from prosecution based upon any questions which might be put or answers which might be given. He did not admit violation of any law or the commission of contempt of the Senate or of its Committee, nor did he claim any right on the part of his clients to refuse to answer under the protection accorded against self-incrimination by the Fifth Amendment. The

1. "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

2. See, also, § 23–105, D.C.Code, 1951; United States v. Cefaratti, 91 U.S.App. D.C. 297, 202 F.2d 13, certiorari denied, 345 U.S. 907, 73 S.Ct. 646.
   In earlier proceedings appellee moved to dismiss the appeal as constituting double jeopardy. We denied that motion

since the question of double jeopardy would be open for consideration, if necessary, should further proceedings be had in the District Court. In the meantime we think a justiciable controversy exists over reinstatement of the indictment, turning upon the application of 18 U.S. C. § 3486 (Supp.1952).

3. The transcript of the conference discloses counsel said: "[Mr. Burling] advised me he wanted to examine the reporter, Mr. Brennan, and also the editor who was responsible for making the decision to publish the testimony * * * and I agreed * * * I would produce * * * the three parties * * *."

claim advanced was simply that what they might say could not be used as evidence against them in any criminal proceeding. Burling on his part made it clear that in his opinion he had no authority or capacity to confer immunity. He did say he had authority to make the telephone request which had brought the gentlemen to Washington and, also, "that the Committee, acting through me, would like to see you and ask some questions about the facts"; but, he added, if it should be decided that the crime of impersonating a Federal officer had been committed there was nothing he knew of that an employee of a Senate committee could do to grant immunity.[4]

With the matter in this status Brennan told in detail and apparently without reserve the manner in which he had obtained the transcript of Gilbert's testimony.[5] In considering whether Brennan's statements thus made and transcribed were unavailable, by reason of 18 U.S.C. § 3486, supra, as evidence against him in the subsequent criminal proceeding, we assume they were made at the request of Committee counsel acting within the scope of his authority.

■ It is apparent that Brennan did not in a literal sense make his statements "before any committee". Though Committee counsel was acting as an arm of the Committee, this is so only in the sense that he was an agent and employee of the Committee; he was not an organic part of the Committee which can be composed only of members of Congress. The statute does not in terms apply to statements given to agents or employees of a committee. It is well established, however, that a meaning not conveyed by the literal language may be given in order to carry out the legislative intention, if the words used will bear such meaning. Johansen v. United States, 343 U.S. 427, 431, 72 S.Ct. 849, 96 L.Ed. 1051; United States v. Bryan, 339 U.S. 323, 338, 70 S.Ct. 724, 94 L.Ed. 884. While we think the language here would bear a meaning beyond the literal no adequate basis appears for concluding Congress intended to immunize statements made in the circumstances presented. Obviously Congress requires, in the performance of its investigative activities, the assistance of personnel who are not members. But the testimony it has insulated from use in subsequent criminal proceedings is not all testimony obtained by investigation. It is that which is given "before any committee". Broader terms were readily available to include statements voluntarily made to committee counsel if these also were intended to be immunized, assuming *arguendo* that such statements would be "testimony".

In United States v. Bryan, supra, the history of 18 U.S.C. § 3486 was reviewed in determining whether it should be construed to preclude the use of certain testimony, admittedly given "before" a committee, in a subsequent trial for contempt under Rev.Stat. § 102, as amended, 52 Stat. 942, 2 U.S.C.A. § 192. The Court departed from the literal language of the statute to hold the immunity not applicable; but the testimony, though before the Committee, was part of the conduct charged to constitute contempt. To have adhered to the literal language would have led to a result thought clearly unintended by Congress. Here we think the result intended does not call for interpreting the language of the statute to include what occurred. Neither the history, lan-

---

4. This position was maintained throughout and was confirmed by General Counsel of the Committee, in a long distance telephone conversation with Burling and counsel for Brennan.

5. The transcript of the conference indicates that Brennan represented that he was the new office manager for the Kefauver Committee, that he had received a telegram from Senator Wiley requesting a transcript of testimony given by Gilbert, and then pretended to read to the representative of the official reporters a non-existent telegram; upon these and similar representations he was permitted to take the transcript marked "Executive Session—Confidential" which in substance was later printed in the newspaper by which Brennan was employed.

guage, nor purpose of the statute indicates an intention to immunize such statements voluntarily made to counsel for the Committee.

Earlier texts in the evolution of the statute are invoked by appellee in support of his position. These are relevant. United States v. Bryan, supra, 339 U.S. at pages 337–338, 70 S.Ct. at pages 733, 734. The progenitor of the present statute is the Act of January 24, 1857, 11 Stat. 155. It was amended by Act of January 24, 1862, 12 Stat. 333, again in 1874, Rev.Stat. § 859, and in 1938, 52 Stat. 943, and codified in the United States Code in 1948 as 18 U.S.C. § 3486. The terms of the original statute make clear that the immunity was part of a legislative plan to protect persons from the use in criminal proceedings of information divulged under compulsion exerted by other provisions of the statute, including that making it a misdemeanor for one wilfully to default if summoned as a witness "by the authority" of either House to give testimony or to produce papers upon any matter before either House or any committee of either House.

As pointed out in United States v. Bryan, supra, 339 U.S. at page 335, 70 S.Ct. at page 732, the function of the statute was,

" * * * to provide an immunity in subsequent criminal proceedings to witnesses before congressional committees, in return for which it was thought that witnesses could be compelled to give self-incriminating testimony. * * * " [6]

The footnotes accompanying the Supreme Court opinion (339 U.S. at pages 335–337, 70 S.Ct. 724) give additional historical details tending to show the purpose to compel the giving of testimony which could not be obtained, because of the Fifth Amendment, unless immunity were granted. This purpose we think would not be served by extension of the immunity to the Brennan statements, for they were given neither under compulsion nor before the Committee. We do not imply that had they been made before the Committee itself the immunity would not apply unless they were also made under compulsion. But when given before the staff without compulsion neither the terms nor the purpose of the statute are met.

We have assumed Burling was acting on behalf of and with the authority of the Committee in seeking information; but the authority in this instance was to obtain cooperation, not to compel. We know of no basis for thinking that a refusal by Brennan to give the information sought by counsel for the Committee, would have been contumacious or would have subjected him to prosecution.

Another aspect of United States v. Bryan, supra, is relied upon by Brennan. It was held in that case that contempt of Congress was committed by Bryan notwithstanding the absence of proof that a quorum of the committee was present when she made her unresponsive return to a subpoena.[7] It is urged in substance

5. The Court continued,
" * * * That purpose was effectively nullified in 1892 by this Court's decision in Counselman v. Hitchcock, 142 U.S. 547 [12 S.Ct. 195, 35 L.Ed. 1110], holding that R.S. § 860, a statute identical in all material respects with R.S. § 859, was not a sufficient substitute for the constitutional privilege of refusing to answer self-incriminating questions. Under that decision, a witness who is offered only the partial protection of a statute such as §§ 859 and 860—that his testimony may not be used against him in subsequent criminal proceedings—rather than complete immunity from prosecution for any act concerning which he testifies may claim his privilege and remain silent with impunity.

"Section 860 was ultimately repealed. * * * But the attention of Congress has not, apparently, been called to the anomaly presented by the continued existence of R.S. § 859, which, like § 860, was a constituent part of an immunity 'bargain' declared invalid in the Counselman case. The courts must, therefore, give effect to the statute. * * * " 339 U.S. at pages 335–337, 70 S.Ct. at pages 732–733.

7. In Christoffel v. United States, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826, the presence of a quorum had been held es-

that if a quorum of a committee need not be shown in order to convict of contempt, then no committee at all need be shown to bring within the immunity a statement given to its counsel for the committee's use. But the statutes governing contempt do not specify that the conduct must be before the committee. The essence of contempt, as explained in United States v. Bryan, supra, is conduct contumacious of authority validly exercised. Furthermore, the Court pointed out that if one desired to defend against the charge of contempt on the ground of defective composition of the committee before which the alleged contempt is manifested, assuming as the Court did that the subpoena required the production of papers before the Committee *qua* committee, then objection on this ground comes too late if not made when the alleged defect in composition could be remedied. Members were present when the default occurred but no question was then raised that Bryan was unable to comply with the subpoena because of the absence of a quorum.

We do not read United States v. Armour & Co., D.C.N.D.Ill., 142 F. 808, also relied upon by appellee, as helpful to his case. The decision insofar as here pertinent was that records and testimony were within the immunity statutes there applicable [8] notwithstanding the records were produced, and testimony was given, without a formal summons or subpoena and notwithstanding the testimony was not under oath. But the evidence was

before the requisite agency, the very question here in controversy. We do not intimate that if Brennan's statements had actually been given before the Committee the absence of a summons or subpoena, or oath, would render the immunity inapplicable.

[4] Arguments from policy, as they might aid in determining the legislative intention, are conflicting. Greater facility in obtaining information which might result from extending the immunity to cover these statements runs into the danger of undue interference with the enforcement of the criminal laws through enlarging the consequences of staff action.[9] We think a matter so close to the actual processes of Congress itself should be left by the courts for Congressional clarification if a staff is to be put on a par with a committee in such circumstances.

Our decision that the evidence was available to the Government notwithstanding 18 U.S.C. § 3486 (Supp.1952) is limited to the facts of this case. There might be situations, of compulsion or otherwise, which would bring statements not made in the presence of a committee, or of a committee quorum, within the scope of the immunity because within the intendment of the statute conferring it. We do not think this is such a case, and lay down no rule to govern situations not before us.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

sential to the competency of the tribunal, the committee, before whom the perjury there involved was alleged to have been committed.

8. 32 Stat. 828, 904 [49 U.S.C.A. § 47]; 27 Stat. 443 [49 U.S.C.A. § 46].

9. The recent decision of the Supreme Court in Adams v. State of Maryland, 347 U.S. 179, 74 S.Ct. 442, has no bearing upon the question now before us. It involved no issue with respect to whether the testimony sought to be used in the state court was given before a committee of Congress.