**UNITED STATES of America**
v.
**James B. E. OLSON, Defendant.**
Cr. No. 43114.

United States District Court
E. D. New York.

Oct. 11, 1955.

Leonard P. Moore, U. S. Atty., for the Eastern Dist. of New York, Brooklyn, N. Y., Herman Merinoff, Asst. U. S. Atty., New York City, and Paul Windels, Jr., Asst. U. S. Atty., Brooklyn, N. Y., for United States.

William W. Kleinman, Brooklyn, N. Y., for defendant.

BYERS, District Judge.

This is a defendant's motion, the surviving aspects of which are:

1. To suppress the use of statements made by the defendant on August 23, 1951 before Messrs. Shapiro, assistant counsel, and Schachner, special counsel, respectively, to the so-called King Committee; and James W. Dowling, special investigator thereof.

2. To suppress testimony given by the defendant before the Grand Jury which found the indictment against him.

3. To suppress all books, records, documents, etc., owned by and belonging to the defendant which were covered by a subpoena issued by the said Grand Jury, obedience to which was unsuccessfully challenged before Judge Inch on February 11, 1952.

These matters have been twice argued, and were the subject of an interim memorandum by the undersigned dated February 21, 1955.

Pursuant thereto a stipulation dated March 7, 1955 was filed in the Clerk's Office, of which I was not apprised until September 26, 1955. An order approving the stipulation was signed October 6, 1955.

The object thereby sought to be accomplished was to eliminate controversy concerning any factual aspects of the matters involved, so that decision could proceed as upon questions of law.

It is believed that such purpose has been achieved.

The first contention is to be disposed of in light of the record as referred to in the said stipulation, namely the colloquy between the defendant and Messrs. Shapiro and Schachner. The former told the defendant that the so-called King Committee "is looking into the general administration of the Income Tax Laws * * * You are not here under subpoena and you are appearing voluntarily * * * witnesses have, of course, under the United States Constitution, a privilege not to answer any questions, the answers to which might tend to show or might be used to prove that they have in some way committed a crime against the United States * * * if there is any topic which you think might fall under that privilege, you tell us about that and we won't ask you any questions about it.

"Mr. Olson: I have no objection."

The defendant was not an untutored person in such matters, for it was stated by his counsel in argument that he had

formerly (1946) been a deputy Collector of Internal Revenue, and an interim Collector. Having left the Government service for about two years, he returned in 1948 to become Supervisor of the Alcohol Tax Unit, and so continued until about August 31, 1951 when his resignation became effective. On August 23, 1951 he was yet in the Government service.

■ That which took place on August 23, 1951 was not a hearing before the Congressional Committee, no member of which was present, but consisted of inquiries made by investigators in pursuit of their authorized calling. As pointed out in United States v. Brennan, 94 U.S. App.D.C. 184, 214 F.2d 268, at page 271, certiorari denied 348 U.S. 830, 75 S.Ct. 53, the witness Olson could not have been dealt with as in contempt of the Committee, had he refused to answer the questions propounded by the investigators.

The argument is advanced by defendant that he was under compulsion, and that his appearance before the investigators was secured by misrepresentation.

The record does not support that contention.

This defendant was a Government employee and no impropriety can be perceived in the request, urgent perhaps in terms, that he lend his aid to the investigators acting for a Congressional Committee, in the performance of a task undertaken in the public interest.

■ The Brennan case is authority for the proposition that the statements made on August 23, 1951 by the defendant do not fall within the protection accorded to a witness before a Congressional Committee, by Tit. 18 U.S.C. § 3486, and will be followed.

This defendant did appear and testify on several later occasions before the King Committee.

As to that testimony, the position of the Government was clearly stated upon the argument:

"The Government does not contend that Mr. Olson's testimony given before the King Congressional

Committee can be used against him. The statute says we cannot, and we will make no effort to use his testimony."

Again,

"* * * the Government's position on that (testimony) is that the testimony given on those subsequent dates could not and should not and was not presented to the Grand Jury; none of it was."

So much of the motion as is addressed to the statements made by defendant to the investigators on August 23, 1951 is denied.

The second contention is that Olson's testimony before the Additional Grand Jury which found the indictment should be suppressed.

This argument is somewhat nebulous standing by itself. He was a witness before the Grand Jury under subpoena, and it is not understood that he asserts that he could not be legally subjected to that process. Having obeyed the subpoena, he was warned of his right to refuse to answer questions on constitutional grounds, and repeatedly availed himself thereof; thus due process was accorded to him.

The difference between the co-existing rights of the Grand Jury to ask questions of a witness who later may be a defendant, and his to refuse to answer, is clearly stated in O'Connell v. U. S., 2 Cir., 40 F.2d 201, and there is no occasion for confusing them. U. S. v. Weisman, 2 Cir., 111 F.2d 260 is not to the contrary, for the decision turned on the lack of waiver to be attributed to that defendant in his appearance before the Grand Jury.

U. S. v. Lawn, D.C., 115 F.Supp. 674, involves testimony given before a Grand Jury by certain defendants after the filing of an information against them. Apparently also there was a failure adequately to warn them.

Here the indictment was not filed until February 3, 1953, which was some months after this defendant's appearance before the Grand Jury which was to indict him as it later turned out.

█ The motion to suppress Olson's testimony before the Grand Jury given at a time when he was merely a witness, and had exercised his constitutional privilege of refusing to answer certain questions, is denied.

The remaining contention has to do with the subpoena duces tecum issued by the Grand Jury to the accountants who had in their custody certain books, papers, records, etc., of the defendant.

█ Obedience to that subpoena was ordered by Judge Inch on or about February 11, 1952 and I cannot avoid the opinion that the defendant seeks by this motion an order which would in effect set aside the ruling so made. It must be obvious that this maneuver if successful would accomplish a reversal of Judge Inch's ruling, and is therefore not to be entertained.

If the matter were open to me as an original proposition, I should make the same ruling as did our Chief Judge.

█ The argument is made that by reason of antecedent events, the accountants were entrusted with the documents by the King Committee, and hence must look to that body for authority to obey the Grand Jury subpoena. If that were deemed to be true for argument's sake, it would be the King Committee that would raise the objection, not the defendant.

There has been no such attempt to create dissension between the legislative and judicial departments of the Government.

In sum, the defendant's motion in all aspects is denied. Settle order.