UNITED STATES of America

v.

**Howard Edwin REINECKE, Appellant.**

**No. 74–2068.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 6, 1975.

Decided Dec. 8, 1975.

---

Clarice R. Feldman, Washington, D. C., with whom William W. Becker, Ralph E. Becker, F. Joseph Donohue, and Theodore Kligman, Washington, D. C., were on the brief, for appellant.

Richard J. Davis, Asst. Sp. Prosecutor, with whom Henry S. Ruth, Jr., Sp. Prosecutor, Peter M. Kreindler, Counsel to the Sp. Prosecutor, and Kenneth S. Geller, Asst. Sp. Prosecutor, were on the brief, for appellee.

Before Mr. Justice CLARK,* and WRIGHT and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant Howard Edwin Reinecke was indicted for perjury [1] on the basis of

---

* Of the Supreme Court of the United States, Retired, sitting by designation pursuant to 28 U.S.C. § 294(a) (1970).

1. 18 U.S.C. § 1621 (1970):

§ 1621. Perjury generally

Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or sub-

his testimony before the Senate Judiciary Committee during that body's consideration of the nomination of Richard Kleindienst to be Attorney General of the United States.[2] The jury concluded that Reinecke had lied to the Committee and accordingly returned a verdict of guilty on one count of the indictment.[3] Reinecke challenges the resulting judgment on several grounds, one of which we find convincing.

I

▮ To obtain a perjury conviction, the Government must prove not only that the defendant, while under oath, willfully made a false statement concerning a material matter, but also that the tribunal to which the statement was made was "competent."[4] For a legislative committee to be competent, a quorum sufficient to conduct the business at hand must be present.[5] Thus an individual may not be convicted of perjury for testimony given to a congressional committee unless the prosecution proves that the false statement was made to a quorum of that committee. *Christoffel v.*

*United States,* 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949).[6]

▮ In the absence of a valid rule establishing a different criterion, a quorum of a legislative body is a majority of the membership. *S. Robert, Robert's Rules of Order Newly Revised* 17, 294 (1970); *see Christoffel v. United States, supra.* The Legislative Reorganization Act applies this principle to Senate committees. 2 U.S.C. § 190a(d) (1970). Under the Senate's Standing Rule XXV, each committee and subcommittee is authorized to reduce the number required for a quorum to no less than one third of the membership, except that

> [e]ach standing committee, and each subcommittee of any such committee, is authorized to fix a lesser number than one-third of its entire membership who shall constitute a quorum thereof for the purpose of taking sworn testimony.

Senate Manual, S.Doc.No.92–1, 92d Cong., 1st Sess., 41 (1971). Pursuant to Rule XXV, the Senate Judiciary Committee met in executive session on Janu-

---

scription is made within or without the United States.

2. The Committee questioned Reinecke, then the Lieutenant Governor of California, as part of its effort to determine if political considerations had influenced the Justice Department's handling of certain antitrust problems involving the International Telephone & Telegraph Company (ITT). This issue was relevant to the Committee's evaluation of the nomination because Kleindienst had supervised the Justice Department's dealings with ITT. Reinecke was asked to testify in order to determine if, prior to disposition of the antitrust matters, he had told Justice Department officials, particularly then Attorney General John Mitchell, of an ITT offer to help finance the Republican Party's nominating convention in San Diego.

3. The indictment contained three counts. Count 3 was dismissed on motion of the Government, and the trial judge dismissed Count 1 at the close of the Government's case. The second count of the indictment specified four allegedly false answers during Reinecke's questioning by Senator Fong. The jury based its verdict on the fourth answer; it reached no decision as to the other three. Joint Appendix (JA) 568–569. The exchange for which Reinecke was convicted follows:

> Senator Fong. So as far as your testimony is concerned, Mr. Gillenwaters—
> Mr. Gillenwaters. Thank you.
> Senator Fong. [A]nd Lt. Governor Reinecke, is that prior to the settlement of the ITT case no conversation was had by either one of you to anyone in the Justice Department that the ITT people had promised to do certain things in San Diego?
> Mr. Reinecke. *That is quite true.*
> (Emphasis in original indictment.)

4. *See* note 1 *supra.*

5. *See, e. g., Meyers v. United States,* 84 U.S. App.D.C. 101, 112, 171 F.2d 800, 811 (1948), *cert. denied,* 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076 (1949); Standing Rules of the Senate, Rule V, ¶ 2, S.Doc. 92–1, 92d Cong., 1st Sess., 4 (1971); *S. Robert, Robert's Rules of Order Newly Revised* 295 (1970).

6. *Christoffel* involved a perjury prosecution under the District of Columbia Code for testimony before a committee of the House of Representatives. The perjury statute in that case was essentially the same as the provision under which appellant was indicted and convicted. *See* 338 U.S. at 84 n. 2, 69 S.Ct. 1447.

ary 26, 1972 and adopted a rule setting one senator as a quorum for the purpose of taking sworn testimony.[7] Relying on this rule, the Special Prosecutor made no effort to prove that more than one senator was present when Reinecke was questioned, and the trial judge instructed the jury that it could return a verdict of guilty if it found that one senator had been present.[8]

Reinecke argues that the one-man quorum rule was not in effect when he testified on April 19, 1972,[9] and that since the prosecution failed to prove the presence of a majority of the Committee,[10] he cannot be convicted of perjury. This claim is based on the Judiciary Committee's failure to comply with the publication requirement of 2 U.S.C. § 190a–2 (1970):

### § 190a–2. Senate committee rules; amendments; publication in Congressional Record

Each standing, select, or special committee of the Senate shall adopt rules (not inconsistent with the Standing Rules of the Senate or with those provisions of law having the force and effect of Standing Rules of the Senate) governing the procedure of such committee. *The rules of each such committee shall be published in the Congressional Record not later than March 1 of each year*, except that if any such committee is established on or after February 1 of a year, the rules of that committee during the year of establishment shall be published in the Congressional Record not later than sixty days after such establishment. *An amendment to the rules of any such committee shall be published in the Congressional Record not later than thirty days after the adoption of such amendment.* If the Congressional Record is not published on the last day of any period during which the rules of any such committee, or an amendment to those rules, is required to be published in the Congressional Record by this section, such rules or amendment shall be published in the first daily edition of the Congressional Record published following such day.

(Emphasis added.) It is undisputed that the Committee's January 26 resolution was never published in the Congressional Record.[11] We must decide whether failure to publish renders a committee rule ineffective once the statutory deadline for publication has passed.

## II

Section 190a–2 was introduced by Senator Javits as an amendment to the Legislative Reorganization Act of 1970, 84 *Stat.* 1140, 1163 (1970), and his explanation of the amendment on the floor of the Senate constitutes its entire legislative history. During his statement the Senator identified two important functions to be served by publication. First, publication assures that the public has access to the rules and notice of the procedures to be followed in dealing with Senate committees:

7. Reinecke maintains that the minutes of the executive session do not demonstrate that the one-man quorum rule was effectively adopted. *See* brief for appellant at 42–46. Although the transcript of the Jan. 26 meeting does evidence some confusion on the part of the reporter and some of the senators, we believe the trial judge was correct to rule that the Committee had adopted the one-man quorum provision.

8. Trial transcript at 2184–2185.

9. *See* note 7 *supra*. Appellant asserted his claim that his testimony was not given before a quorum of the Committee by means of a pretrial motion to dismiss the indictment. *See* JA 39–41.

10. There is some indication in the record that in the absence of the one-man quorum rule, the Judiciary Committee's quorum for receiving testimony was a third rather than half of its membership. *See* stipulation dated June 28, 1974, JA 113, 114. Since the prosecutor relied on the one-man quorum rule, *see* text accompanying note 8 *supra*, it is not necessary for us to determine whether a third or half of the Committee's membership constituted a quorum.

11. The Committee did publish a one-man quorum rule, which it had adopted the day before, on May 2, 1974. 120 *Cong.Rec.* S6899 (daily ed. May 2, 1974).

[U]nder present conditions, in fairness to all who deal with the Senate, all this amendment seeks is just there be open and published rules by every committee and that they be available to the general public as part of the procedures of the Senate, just as the Senate rules.

\*    \*    \*    \*    \*    \*

\*  \*  \*  It seems to me that with authority comes responsibility, and that is all I am pleading for. The public should know what the rules are of any committee which subpoenas any member of the public, with which any member of the public desires to deal, or how he goes about his relations with that committee.

116 *Cong.Rec.* 34949–34950 (1970). The second function of the publication provision is implicit in these statements: publication makes it possible to hold committees and their members politically accountable for the fairness of their rules. Moreover, publication allows the Senate to exercise supervisory control over committee rules:

What a committee puts into those rules will depend upon the will of that committee, which can always be dealt with by the will of the Senate, if the committee should be unfair, which I think is quite inconceivable. But I do believe that in the present state of the administration of justice—and we are an independent part of the Govern-

ment, with an independent personality and independent powers—this is a very elementary provision which we ought to have.

*Id.* at 34950.[12]

■ When Section 190a–2 was introduced, eight of 21 of the Senate's committees and subcommittees had no available rules. The remaining 13 had published their rules in committee calendars (8), by multilith (4), or in a separate pamphlet (1). *Id.* at 35009. The Javits amendment was a response to this variation in the practice of Senate committees. In order to achieve its purposes of notice and accountability, the amendment *required* the committees to publish their rules in a specified journal and within specified time limits. Both Senator Javits' comments on the floor[13] and the language of the statute establish that compliance with the publication provision's terms is mandatory for Senate committees.

■ Thus the language, purposes, and legislative history of Section 190a–2 all point to the conclusion that a committee rule which has not been published pursuant to the statute cannot be considered valid. This conclusion in turn requires us to hold that at the time of appellant's testimony a quorum of the Senate Judiciary Committee for the purpose of taking sworn testimony was more than one senator.[14] The prosecu-

---

**12.** Concern that his proposal might be interpreted as an infringement on the prerogatives of the individual committees apparently induced Senator Javits to emphasize that the amendment did not dictate the substance of committee rules. *See* 116 *Cong.Rec.* 35008–35009 (1970). These comments are not inconsistent with viewing the publication requirement as partially designed to facilitate Senate control over committee rules when necessary in the interest of fairness.

**13.** In brief, the amendment would seek only to effectuate a rule of the Senate that there *shall* be committee rules of procedure. \*  \*

\*  \*  \* It provides only that *there shall be rules* and that *they shall be published* in the *Congressional Record* not later than March 1 of each year.

116 *Cong.Rec.* 35008 (1970) (emphasis added). *See also id.* at 35009.

**14.** *See* note 10 *supra.* The Government contends that since § 190a–2 by its terms allows a rule to become effective before publication, failure to publish cannot be said to render a rule ineffective. Government brief at 44–45. This argument that because the statute grants a grace period a rule which is not published by the end of that grace period must therefore be considered effective, is a *non sequitur.* During the grace period there has been no violation of the procedures mandated by § 190a–2 and there is, accordingly, no obstacle to treating the rule as valid; after the grace period, obviously, a violation has taken place. We cannot derive from the statute's reasonable provision designed to assure that necessary rules can be

tor's proof that one senator was present during Reinecke's testimony was therefore insufficient to support a guilty verdict according to the rule of *Christoffel*,[15] and the conviction must be *Reversed.*

implemented without delay the conclusion that the entire carefully elaborated statutory scheme is merely directory.

**15.** The Government advances two objections to this conclusion. First, it argues that, given the valid adoption of a one-man quorum rule, failure to publish cannot be said to have rendered the Committee incompetent at the time of Reinecke's testimony. The basis of this contention is that the question of a committee's competency involves "considerations that relate to its fundamental authority to elicit sworn testimony, *i. e.*, * * * the *presence* of a quorum for the execution of its functions." Government brief at 44 (emphasis in original). The Government contends that there is no reason to consider publication of the one-man quorum rule "a condition upon this fundamental authority." *Id.* This argument assumes its conclusion by positing the continued validity of the one-man quorum rule after the publication deadline set by § 190a–2 had passed. We condition only the validity of a Committee rule, not the competency of the Committee, on compliance with the procedures established by § 190a–2 for publication of Committee rules. Our conclusion that the Committee was not shown to be competent follows from the invalidity of the one-man quorum rule and the prosecution's consequent failure to prove "the *presence* of a quorum for the execution of [the Committee's] functions."

Second, the Government contends that the conviction should not be reversed because there is no indication that Reinecke's conduct would have been different had he known of the one-man quorum rule. Government brief at 45–47. The fact that Reinecke did not rely on the invalidity of the one-man quorum rule, while fatal to a due process argument not raised by appellant, is irrelevant to the question whether the Committee was shown to be competent at the time of the testimony. Under *Christoffel*, the competence of the tribunal must be proved as an independent element of the crime. If competence is not shown, the crime of perjury is not established regardless of whether the witness relied on the absence of a quorum.