MIGUEL HERNÁNDEZ AGOSTO, demandante y recurrido, *v.* CARMEN LAURA BETANCOURT, ANTONIO RIVERA RODRÍGUEZ, SAUL SANTIAGO CORREA y JOSÉ PÉREZ MARRERO, ANTONIO FIGUEROA y LOTTIE GONZÁLEZ, demandados y peticionarios.

*Números:* O-84-604    *Resueltos:* 15 de diciembre de 1986
O-84-605
O-84-703
O-84-729
O-84-730

80

*Amancio Arias Cestero,* de *Arias Cestero & Arias Guardiola,* abogado de los peticionarios; *Marcos A. Ramírez Lavandero,* de *Ramírez & Ramírez,* abogado del recurrido.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

Nuevamente tenemos ante nuestra consideración otra controversia entre la Rama Ejecutiva y la Asamblea Legislativa sobre el alcance del poder investigativo de una comisión legislativa. En esta ocasión varios ayudantes del ex Gobernador Carlos Romero Barceló recurrieron al foro judicial para que resolviéramos una controversia sobre la interpretación y alcance del privilegio ejecutivo. *Peña Clos* v. *Cartagena Ortiz,* 114 D.P.R. 576, 597–598 (1983).

Al evaluarla debemos recordar que aunque el poder investigativo de la Asamblea Legislativa es amplio, no es ab-

soluto. Le corresponde a la Rama Judicial definir su ámbito para asegurar que se cumpla con un propósito legislativo y con los postulados de la Constitución. *Peña Clos* v. *Cartagena Ortiz*, supra, pág. 591; *Santa Aponte* v. *Srio. del Senado*, 105 D.P.R. 750, 759–760 (1977) ; *Banco Popular, Liquidador* v. *Corte*, 63 D.P.R. 66 (1944).

## I

Los cinco recursos consolidados plantean, en esencia, la misma reclamación y surgen de un mismo patrón de conducta. Cuando se suscitó la controversia los copeticionarios Carmen Laura Betancourt, Saúl Santiago Correa, José Pérez Marrero, Antonio Rivera Rodríguez y Lottie González eran funcionarios de la Oficina del Gobernador.[1] El otro copeticionario, Antonio Figueroa, ocupó el cargo de Director de Relaciones Públicas del Departamento de Justicia entre noviembre de 1979 y octubre de 1981. Durante la investigación de los sucesos del Cerro Maravilla todos los peticionarios se negaron a testificar ante la Comisión de lo Jurídico del Senado.[2] Ante su negativa a comparecer, la Comisión de lo Jurídico recurrió al Tribunal Superior de San Juan al amparo del procedimiento establecido en el Art. 34A del Código Político, 2

---

[1] La Sra. Carmen Laura Betancourt y el Sr. Antonio Rivera Rodríguez eran ayudantes personales del entonces Gobernador Romero Barceló. El señor Pérez Marrero era ayudante del Gobernador a cargo de Programación. La Srta. Lottie González era Directora de Prensa y Comunicaciones de La Fortaleza. El señor Santiago Correa era Técnico de Grabaciones adscrito a la Oficina del Gobernador.

[2] Las citaciones en disputa fueron emitidas por el Senado de la pasada Asamblea Legislativa y por su Comisión de lo Jurídico al amparo de la Resolución 91. El 2 de enero de 1985 el Senado de Puerto Rico de la Décima Asamblea Legislativa entró en funciones y quedó debidamente constituido. El 2 de abril de 1985 fue aprobada la Resolución del Senado 31 con propósitos, objetivos y alcance similar a la Resolución 91. El Senado de Puerto Rico, mediante moción de 26 de febrero de 1986, ha expresado que continúa teniendo interés y necesidad de recibir los testimonios de todos los recurrentes.

L.P.R.A. sec. 154a. (³) El Tribunal a quo sostuvo la posición del Senado y ordenó a los peticionarios que comparecieran ante dicha comisión bajo apercibimiento de desacato. A solicitud de éstos acordamos expedir.

En su recurso impugnaron la validez de la citación bajo el fundamento de que la comisión estaba inconstitucionalmente constituida. También señalaron que el tribunal de instancia erró al no reconocer que como eran ayudantes o funcionarios cercanos del entonces Gobernador Romero Barceló, la doctrina de privilegio ejecutivo impedía que el Senado les obligara a testificar. Por su parte, el Senado compareció para sostener la jurisdicción de la Comisión de lo Jurídico. Alegó que el reglamento era válido y el reclamo del privilegio ejecutivo improcedente.

## II

La función de los parlamentos modernos en el proceso gubernativo es amplia y abarcadora. (⁴) Para desempe-

---

(³) El Art. 34A del Código Político, 2 L.P.R.A. sec. 154a, dispone que cuando un testigo *debidamente citado* se niegue a comparecer ante una Comisión de la Asamblea Legislativa:

"(1) . . . el Presidente o Vicepresidente de cualquiera de dichos organismos legislativos podrá solicitar la ayuda de la Sala de San Juan del Tribunal Superior de Puerto Rico para requerir la asistencia y la declaración de testigos y la producción y entrega de documentos solicitados en el asunto, pesquisa e investigación que dicha Asamblea Legislativa, Cámara, Senado, comisión, subcomisión o comisión conjunta esté llevando a cabo.

. . . . . . . .

"(3) Radicada la petición ante la Sala de San Juan del Tribunal Superior de Puerto Rico, dicho Tribunal expedirá una citación requiriendo y ordenando al testigo para que comparezca y declare o para que produzca la evidencia y documentos solicitados, o para ambas cosas, ante la Asamblea Legislativa, el Senado, la Cámara de Representantes, comisión, subcomisión o comité conjunto, según sea el caso; y cualquier desobediencia a la orden dictada por el Tribunal será castigada por la Corte como un desacato civil a la misma."

(⁴) J. Trías Monge, *Historia Constitucional de Puerto Rico*, Río Piedras, Ed. U.P.R., 1982, Vol. III, pág. 136; R. Serrano Geyls, *Executive-Legislative Relationships in the Government of Puerto Rico, 1900–1954*, XIV

84

ñar eficientemente sus funciones, los organismos legislativos han recurrido a su poder de investigación. El ejercicio de ese poder depende grandemente de la facultad que tienen los cuerpos legislativos de citar testigos a comparecer y a traer los documentos pertinentes a las vistas convocadas al amparo de una delegación autorizada por el cuerpo correspondiente. (⁵)

■ En Puerto Rico el Código Político provee dos procedimientos que tienen disponibles cualquiera de las Cámaras Legislativas para recurrir a los tribunales a vindicar su autoridad y ordenar la comparecencia de un testigo que se ha negado a testificar o a producir los documentos requeridos.

Mediante el Art. 34 el Presidente o Vicepresidente de la Cámara correspondiente tiene que, luego de que los testigos hayan incumplido con las citaciones, someter al Secretario de Justicia una certificación con una relación de hechos que explique lo sucedido. Le corresponde entonces al Secretario de Justicia formular acusaciones criminales contra dichas personas por negarse a asistir, testificar o presentar evidencia. 2

---

Rev. Jur. U.I.A. 11, 40–52 (1979); W. Keefe y M. Ogul, *The American Legislative Process*, Prentice-Hall, Inc., New Jersey, 1977, págs. 14–33.

(⁵) A manera de ilustración sobre la jurisprudencia en cuanto a las facultades del Congreso para requerir la comparecencia de testigos, véanse: *Kilbourn* v. *Thompson*, 103 U.S. 168 (1880); *McGrain* v. *Daugherty*, 273 U.S. 135 (1927); *Tenney* v. *Brandhove*, 341 U.S. 367 (1951); *Quinn* v. *United States*, 349 U.S. 155 (1955); *Watkins* v. *United States*, 354 U.S. 178 (1957); *Barenblatt* v. *United States*, 360 U.S. 109 (1959); *Gojack* v. *United States*, 384 U.S. 702 (1966); *Eastland* v. *United States Servicemen's Fund*, 421 U.S. 491 (1975).

Para un análisis de algunas de estas decisiones véanse también a: R. Rotunda, J. Nowak y J. Young, *Treatise on Constitutional Law: Substance and Procedure*, St. Paul, Minnesota, West Pub. Co., 1986, Secs. 8.1–8.5, págs. 462–484; P. Kurland, *Watergate and the Constitution*, Chicago, Univ. of Chicago Press, 1978, págs. 17–33; R. Berger, *Executive Privilege—A Constitutional Myth*, Cambridge, Massachusetts, Harvard Univ. Press, 1974, págs. 15–48; A. Moreland, *Congressional Investigations and Private Persons*, 40 S. Cal. L. Rev. 189 (1967); J. Landis, *Constitutional Limitations on the Congressional Power of Investigation*, 40 Harv. L. Rev. 153, 159–212 (1926); C. Potts, *Power of Legislative Bodies to Punish for Contempt*, 74 U. Pa. L. Rev. 691 (1926).

L.P.R.A. sec. 154; Art. 255 del Código Penal, 33 L.P.R.A. sec. 4475. *Cf. Pueblo* v. *Pérez Casillas*, 117 D.P.R. 380 (1986).

Por otro lado, el Art. 34A permite que ambos cuerpos acudan directamente a los tribunales "para requerir la asistencia y la declaración de testigos y la producción y entrega de documentos solicitados". 2 L.P.R.A. sec. 154a(1). Una vez se radica la petición el Tribunal Superior expide una citación que requiera y ordene la comparecencia de los testigos con los documentos solicitados. En caso de desobediencia de la orden dictada el tribunal procederá a considerar el asunto como un desacato civil. 2 L.P.R.A. sec. 154a(3).

■ Antes de declarar incurso en desacato a un testigo que se ha negado a comparecer a la Legislatura, el tribunal tiene que ofrecerle una oportunidad adecuada para defenderse. En ese momento puede levantar como defensa que la comisión investigadora no estaba válidamente organizada. Este requisito es de naturaleza jurisdiccional y le corresponde al cuerpo legislativo demostrar que dicha comisión estaba, dentro de nuestro esquema constitucional, debidamente constituida para hacer-la investigación.

■ En forma similar ocurre cuando se acusa a un testigo de cometer perjurio ante una comisión legislativa. En el juicio criminal puede levantar como defensa que al momento de emitir las declaraciones objeto de la acusación la comisión no estaba debidamente constituida, pues no había quórum. Véanse: *Christoffel* v. *United States*, 338 U.S. 84 (1949); *United States* v. *Reinecke*, 524 F.2d 435 (1975). Esta defensa también protege al testigo acusado de desacato por negarse a contestar preguntas *si oportunamente* levantó la falta de quórum. *United States* v. *Bryan*, 339 U.S. 323, 332 (1950).

### III

■ En el presente caso los peticionarios fueron citados según disponen los Arts. 31 y 34A del Código Político, 2

L.P.R.A. secs. 151, 154a, para comparecer ante unà "comisión" del Senado. Ellos cuestionaron oportunamente la citación de la Comisión de lo Jurídico del Senado al amparo de la Regla 7.1 del Reglamento de la Investigación sobre los Sucesos del Cerro Maravilla, e impugnaron la validez de dicha citación porque en virtud de dicha regla se excluyó a la representación de la minoría en las vistas ejecutivas a las que fueron citados. En *Silva v. Hernández Agosto,* 118 D.P.R. 45 (1986), resolvimos que la Regla 7.1 en controversia, aprobada por la Comisión de lo Jurídico del Senado es inconstitucional porque priva a las minorías de su derecho a estar representadas en una comisión legislativa. En *estas circunstancias* ellos levantaron a tiempo una defensa legítima, por lo que no procedía ni la orden de comparecencia ni la determinación de desacato en su contra.

En vista de la anterior conclusión, y considerando que las circunstancias en las que se producen los planteamientos de los peticionarios han variado, no es necesario que este Tribunal resuelva en esta ocasión la controversia sobre el alcance del privilegio levantado por el Primer Ejecutivo o sus funcionarios más cercanos frente a una investigación de la Asamblea Legislativa. Los tribunales tienen el deber de evitar decidir a destiempo cuestiones constitucionales. Cuando surge una controversia entre las ramas de gobierno referente a sus poderes, la intervención judicial debe aplazarse hasta que todas las posibilidades de lograr un acuerdo se hayan agotado. La abstención judicial es necesaria para mantener el delicado balance de poderes. Como en este caso la controversia sobre el alcance del privilegio ejecutivo presenta una compleja cuestión constitucional en el contexto de una disputa entre la Asamblea Legislativa y la Rama Ejecutiva, el Tribunal no debe decidir estas cuestiones hasta que existan las circunstancias adecuadas. Véanse: *Molina v. C.R.U.V.,* 114 D.P.R. 295, 297 (1983); *Mari Bras v. Alcaide,* 100 D.P.R. 506, 513

(1972) ; *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971) ; *Suárez Sánchez* v. *Tribunal Superior*, 92 D.P.R. 507, 516 (1965) ; *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 596 (1958) ; *Walker* v. *Tribl. Contribuciones y Tesorero*, 72 D.P.R. 698, 706 (1951) ; *Spanish Am. Tobacco Co.* v. *Buscaglia*, 71 D.P.R. 991, 993 (1950). Así evitamos adelantar pronunciamientos en abstracto de índole consultiva.

Por los fundamentos expuestos, *procede dictar sentencia y revocar la determinación del Tribunal Superior en los recursos O-84-730 y O-84-729, O-84-703, O-84-605, O-84-604. Este dictamen es sin menoscabo de que la Comisión de lo Jurídico del Senado cite nuevamente a los peticionarios mediante un procedimiento compatible con los requisitos pertinentes, inclusive los esbozados en Silva v. Hernández Agosto, supra.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Ortiz y la Juez Asociada Señora Naveira de Rodón se inhibieron.