Ronald Lee JASCH, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4663.

Supreme Court of Wyoming.

April 14, 1977.

Christopher A. Crofts, Riverton, signed the brief and appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Jerry M. Murray, Senior Asst. Atty. Gen., Cheyenne, signed the brief and Frank R. Chapman, Asst. Atty. Gen., Cheyenne, appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

The defendant-appellant was found guilty by a jury of a controlled substance (marijuana) delivery in violation of § 35–347.31(a)(ii), W.S.1957, Cum.Supp., and sentenced.[1] His appeal raises two issues: (1) He was prejudicially joined for trial with a codefendant Jevne, and (2) A statement made by codefendant implicating defendant was constitutionally inadmissible. We will affirm.

Codefendant Jevne was joined over the timely objection of defendant. At the trial,

the evidence disclosed that Ted Moore, a volunteer deputy sheriff, while working part-time evenings as an undercover agent, asked a bartender to introduce him to someone who would peddle him some marijuana. Defendant Jasch and the agent were introduced and a deal was made in the bar restroom for the sale of a lid of marijuana for $15.00, delivery to be made at a different bar. Before leaving, the agent paid Jasch for the lid. Delivery was later made to the agent by codefendant Jevne at the different bar. Over objection of the defendant on hearsay grounds and following an instruction from the trial judge that the jury was to ignore the statement as to defendant, the agent was permitted to testify that the codefendant told him, "I have the lid of grass from Jasch." Codefendant elected not to testify but the defendant did. Codefendant was therefore not available for cross-examination concerning the statement testified to. Other facts will be set out as required.

We will first discuss the second issue because in this manner its interaction with the first will develop more coherently. The defendant relies on *Bruton v. United States*, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, appeal after remand 8 Cir., 416 F.2d 310, cert. den. 397 U.S. 1014, 90 S.Ct. 1248, 25 L.Ed.2d 428. In that case a joint trial of the defendant and one Evans was held, both charged with armed robbery. There, the postal inspector had received a post-arrest confession from Evans, the codefendant, expressly implicating the defendant. The court gave an instruction to the jury limiting its receipt in evidence only as to the defendant Bruton. It was held that:

" * * * [B]ecause of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination se-

---

1. Section 35–347.31(a) provides that it is "unlawful for any person to * * * deliver, * * * a controlled substance." Marijuana is a Schedule I controlled substance. Section 35–347.14(d)(10). The felony penalty of up to 10 years imprisonment is provided by § 35–347.31(a)(ii).

**1330** ▮ ▮▮▮▮▮▮▮▮▮▮

cured by the Confrontation Clause of the Sixth Amendment. * * * "² 

▮ At first blush, one might be deluded into believing that *Bruton* is applicable but, in the first place, the codefendant's utterance here was not a confession as in *Bruton* and, secondly, as will be developed, it is well settled law in massive dimensions that in the trial of defendants tried at the same time, jointly or separately charged as coactors in the commission of a crime, the statements of a coconspirator or actor made during and in furtherance of the commission of a crime are admissible as an exception to the hearsay rule and survive coexistent with the Confrontation Clause.

▮ The Sixth Amendment to the United States Constitution provides in pertinent part that, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *." Since 1965, that provision has been fully applicable to the states under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Pointer v. State of Texas*, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, mandate conf. to Tex.Cr.App., 391 S.W.2d 62; *Douglas v. State of Alabama*, 1965, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. Moreover, § 10, Article I, Wyoming Constitution, provides that "In all criminal prosecutions the accused shall have the right * * * to be confronted with

the witnesses against him, * * *." The *Bruton* doctrine is applicable to the states. *Dutton v. Evans,* infra.

We will first clear away any suggestion that *Bruton* has application to the case before us. Within the context of *Bruton* itself, consideration of the concept of hearsay exceptions (the declaration by codefendant here) was specifically excluded from its application, when the court said in footnote 3:

"* * * There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause. * * *" (391 U.S. 128, 88 S.Ct. 1623, 20 L.Ed.2d 481)

The Court then cited several cases and texts which have particular pertinence. There is a world of difference between a defendant's post-conspiracy statement implicating another and a statement implicating another made during the progress of a crime jointly committed.

▮ As far as we are concerned in this case, the Supreme Court answered the question reserved in *Bruton* in *Dutton v. Evans*, 1970, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, on remand 5 Cir., 441 F.2d 657, where at issue was a Georgia statute which provided, " 'After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of

---

2. Even so, the rule of *Bruton* is overcome and overridden when an appellate court is convinced that the defendant was not subjected to a substantial risk of incurable prejudice as a result. In other words, error of constitutional dimensions does not inevitably occur. There may be harmless error; the principles laid down in *Bruton* must be applied with practicality and common sense. *Brown v. United States,* 1973, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Harrington v. California,* 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *United States v. Walton,* 8 Cir. 1976, 538 F.2d 1348; *United States ex rel. Stanbridge v. Zelker,* 2 Cir. 1975, 514 F.2d 45, cert. den. *Stanbridge v. Zelker,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102; *United States v. DeBerry,* 2 Cir. 1973, 487 F.2d 448; *United States ex rel. Ortiz v. Fritz,* 2 Cir. 1973, 476 F.2d 37, cert. den. 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482; *United States v. Spinks,* 7 Cir. 1972, 470 F.2d 64, cert.

den. 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305; *Tasby v. United States,* 8 Cir. 1971, 451 F.2d 394, cert. den. *Bryant v. United States,* 405 U.S. 992, 92 S.Ct. 1262, 31 L.Ed.2d 459, and *Feggett v. United States,* 405 U.S. 992, 92 S.Ct. 1273, 31 L.Ed.2d 459, and *Burkhalter v. United States,* 405 U.S. 992, 92 S.Ct. 1273, 31 L.Ed.2d 459, cert. den. 406 U.S. 922, 92 S.Ct. 1787, 32 L.Ed.2d 122; *United States v. Fountain,* 8 Cir. 1971, 449 F.2d 629, cert. den. 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 802; *Metropolis v. Turner,* 10 Cir. 1971, 437 F.2d 207; *United States ex rel. Catanzaro v. Mancusi,* 2 Cir. 1968, 404 F.2d 296, cert. den. 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123.

In *Brown v. United States,* supra, the court stated, " * * * We reject the notion that a *Bruton* error can never be harmless. '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials. * * * "

the criminal project shall be admissible against all.'" A statement of an accomplice implicating Evans was received in evidence.[3] The court stated:

"* * * [W]e do not question the validity of the coconspirator exception applied in the federal courts.

"* * * It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise. *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481; *Krulewitch v. United States,* 336 U.S. 440, 93 L.Ed. 790, 69 S.Ct. 716. * * * *"

The point we make is easier to reach in that the court in *Dutton* went further and allowed the state formula permitting the rule to protrude into the concealment phase of the conspiracy and in citing its case of the previous term, *California v. Green,* 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, on remand, 3 Cal.3d 981, 92 Cal.Rptr. 494, 479 P.2d 998, reaffirmed its position that the exceptions to the hearsay rule and the rule itself are not in congruence with and there is no automatic conclusion that confrontation rights have been denied if there is violation of a hearsay rule or application of its exceptions. The facts of the case before us are within the federal rule and we cannot and do not make any ruling as to what our decision would be with respect to a declaration made in the concealment phase of a conspiracy. In *Dutton,* the court noted that the defendant had, as here, his right of confrontation fulfilled by cross-examination of the witness as to whether the statement was actually made, unreliable or unreal.

The court in *Dutton* closed its opinion, quoting Justice Cardozo in *Snyder v. Commonwealth of Massachusetts,* 1934, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575, a statement well worth repeating:

"'There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.' 291 U.S. [at] 122 [54 S.Ct. at 338], 78 L.Ed. at 687."

There is nothing in *Bruton* or *Dutton* giving any hint that it would upset a doctrine that has prevailed for years. See also *Wong Sun v. United States,* 1963, 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441, 457, for a further statement of the rule that a coconspirator's hearsay statements may be admitted for no purpose unless made during and in furtherance of the conspiracy.[4]

We have been discussing a rule applicable to conspiracy. No conspiracy was charged here, so why do we discuss it? While the crime of conspiracy is one of popular application in the federal courts and in many states as well, it did not become one of statutory origin in Wyoming until 1969 and 1971, when the legislature by § 1, Ch. 164, S.L.Wyo. 1969, and § 1, Ch. 121, S.L.Wyo. 1971, adopted what is now § 6–16.1, W.S. 1957, Cum.Supp., as follows:

"If two or more persons conspire to (a) commit a felony in the State of Wyoming or to commit an act beyond the State of Wyoming which if done in this state

---

**3.** After arraignment, one of the defendants stated to a fellow prisoner, "'If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now.'"

**4.** For a full discussion of the *Bruton* rule, see the Annotation, 1972, 29 L.Ed.2d 931. It is noted there that numerous courts have held the *Bruton* rule inapplicable to conspiratorial statements made prior to the termination of a conspiracy, since the admission against all conspirators of statements made during the pendency of the conspiracy is a recognized exception to the hearsay rule. However, a few representative cases dealing with post-conspiratorial statements have been included, the *Bruton* rule being applicable to the latter, with respect to which we make no holding.

would be a felony, and (b) one or more of such persons do any act, within or without the State of Wyoming, to effect the object of the conspiracy, each, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years or both. A conspiracy may be prosecuted in the county where the conspiratorial agreement or combination was entered into, or in any county where any act or acts evidencing the conspiracy or in any county wherein the furtherance of its purpose took place."

Hence, Wyoming therefore recognized the crime of conspiracy before the case before us ever arose. Because of the recentness of the conspiracy enactment, there is no useful Wyoming state jurisprudence. However, conspiracy was known when this state was a territory. In *Haines v. Territory*, 1887, 3 Wyo. 167, 13 P. 8, there was a prosecution against several defendants for obtaining property by false pretenses. A claim of error was made in permitting the victim to testify as to the declarations of one of the coconspirators before the fact of an existing conspiracy had been fully proven. While the court did not get into the exact question that we have in this case, our answer that such declarations are admissible is reflected in the ruling of the court that in an action for conspiracy, it is within the discretion of the trial court to allow evidence of the declaration of one of the alleged conspirators to be given prior to proof of the conspiracy itself so long as there is proof of the conspiracy entered thereafter. It is also interesting to see that no conspiracy was charged but the rule prevailed as to defendants jointly involved in the substantive crime. We will cover the principle involved and the significance of the preceding sentence.

■ A conspiracy is an agreement between two or more persons to do an unlawful act. The crime of conspiracy is complete when an agreement has been made and overt acts performed to further the unlawful design. *Goldsmith v. Cheney*, 10 Cir. 1971, 447 F.2d 624. It was said by Judge Learned Hand in *United States v. Olweiss*, 2 Cir. 1943, 138 F.2d 798, cert. den.

*Olweiss v. United States*, 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047, with his usual simplicity and clarity:

" * * * [A]nd any evidence admissible against Olweiss was admissible against them, so far as it consisted of conduct in furtherance of the joint venture in which all three were engaged. The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis; their admission does not depend upon the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal. * * * "

In the case before us, Jasch is charged with delivery as follows:

" * * * that, Ron Jasch, on the 17th day of March, 1975, in Fremont County, Wyoming, did unlawfully, intentionally and knowingly deliver a controlled substance at or around Bernie's Liquors and Lounge on East Main, Riverton, Fremont County, Wyoming, to Ted Moore, to-wit: The said Ron Jasch did offer for sale and take $15.00 for the delivery of marihuana, and Steve Jevne, as agent for Ron Jasch, did deliver to Ted Moore, marihuana, * * * "

The State's case, though not charging conspiracy is grounded on the same principles arising from agency.

■■ A statement made in the course and in furtherance of the conspiracy, even though an out-of-court statement by one conspirator, may be admitted against his fellow conspirators and is not hearsay. McCormick on Evidence 2d Ed. HB, § 267 at p. 645; 4 Wigmore, Evidence § 1079, p. 180 (Chadbourn rev. 1972). Rule 801(d), Federal Rules of Evidence, carries forward that long-standing rule:

"(d) A statement is not hearsay if—

\* \* \* \* \* \*

"The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in the truth,

or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The Supreme Court of the United States traces the rule to an agency concept in like circumstances in a civil setting. In *Hitchman Coal & Coke Company v. Mitchell*, 1917, 245 U.S. 229, 249, 38 S.Ct. 65, 72, 62 L.Ed. 260, 275, L.R.A. 1918C, 497, Ann.Cas. 1918B, 461, mandate stayed 38 S.Ct. 190, involving a similar situation in a civil context, it was explained:

" * * * The rule of evidence is commonly applied in criminal cases, but is of general operation; indeed, it originated in the law of partnership. It depends upon the principle that when any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them. * * * "

Here, Jevne was the agent of Jasch. See ☞423, Criminal Law, Digest system.

We hold with the majority of courts that receipt into evidence in a joint trial of one coactor's declaration implicating another coactor, under the exception to the hearsay rule that a statement by a coconspirator of a party during the course and in furtherance of the conspiracy is not hearsay, does not violate the other coactor's constitutional right of confrontation. *United States v. Register*, 5 Cir. 1974, 496 F.2d 1072, cert. den. *Cochran v. United States*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819, and *Hornsby v. United States*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (heard by an undercover agent); *Lowther v. United States*, 10 Cir. 1972, 455 F.2d 657, cert. den. *Lowry*

*v. United States*, 409 U.S. 857, 93 S.Ct. 114, 139, 34 L.Ed.2d 102, reh. den. 409 U.S. 1050, 93 S.Ct. 511, 34 L.Ed.2d 502; *United States v. Clayton*, 1 Cir. 1971, 450 F.2d 16, cert. den. 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250; *Migliore v. United States*, 5 Cir. 1969, 409 F.2d 786, cert. den. 396 U.S. 975, 90 S.Ct. 449, 24 L.Ed.2d 444 (heard by undercover agents); *Commonwealth v. Gordon*, Mass.App. 1976, 344 N.E.2d 218; *People v. Schlepp* 1974, 184 Colo. 28, 518 P.2d 824; *State v. Skinner*, 1973, 110 Ariz. 135, 515 P.2d 880; *Dooley v. State*, Okl.Cr. 1971, 484 P.2d 1324; *State v. Boiardo*, 1970, 111 N.J. Super. 219, 268 A.2d 55, certif. den. 57 N.J. 130, 270 A.2d 33, cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (heard by undercover agent); *People v. Brawley*, 1969, 1 Cal.3d 277, 82 Cal.Rptr. 161, 461 P.2d 361, cert. den. 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441.

In order to receive in evidence a conspirator's extrajudicial statement against a fellow coconspirator, a conspiracy need not be charged. *McCormick on Evidence*, 2d Ed. HB, § 267, p. 646; *State v. Skinner*, 1973, *supra; State v. Shaw*, 1965, 195 Kan. 677, 408 P.2d 650. Where there is concerted action between codefendants, evidence of the declarations of one, during and in furtherance of the common design or plan, is admissible against the other defendants, even though no conspiracy is charged. *State v. Rush*, Iowa 1976, 242 N.W.2d 313; *Green v. State*, 1975, 25 Md.App. 679, 337 A.2d 729; *People v. Stewart*, 1974, 24 Ill. App.3d 605, 321 N.E.2d 450; *Lewis v. People*, 1942, 109 Colo. 89, 123 P.2d 398. And where a joint venture is shown, declarations made during and in furtherance of the venture are admissible against the party not present even though no conspiracy is alleged. *United States v. Buschman*, 7 Cir. 1976, 527 F.2d 1082; *United States v. Riddick*, 8 Cir. 1975, 519 F.2d 645; *United States v. Grant*, 5 Cir. 1975, 519 F.2d 64; *Park v. Huff*, 5 Cir. 1975, 506 F.2d 849, cert. den. 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40; *United States v. Tanner*, 7 Cir. 1972, 471 F.2d 128, cert. den. 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220; *United States v. Schroeder*, 8 Cir. 1970, 433 F.2d 846, cert.

den. *Allen v. United States,* 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636, and 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224.

 There must be evidence showing the conspiracy, other than the statement alone. See Annotation 46 A.L.R.3d 1148, entitled "Necessity and Sufficiency of Independent Evidence of Conspiracy to Allow Admission of Extrajudicial Statements of Coconspirators." While slight is not enough, *prima facie* evidence is sufficient. Within *State v. Thompson,* 1966, 273 Minn. 1, 139 N.W.2d 490, cert. den. 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56, is an excellent discussion of the use of conspirator's statements in a prosecution for a crime where conspiracy was not charged; the court said:

" * * * The term 'prima facie' in this context is rather a nebulous one that defies exact definition. It can probably be defined only in terms of sufficient evidence to permit the trial court reasonably to infer that there existed a conspiracy. * * * "[5]

That same court also determined in this regard that a conspiracy is usually established by circumstantial evidence and the order of proof is not significant, as long as the record as a whole shows facts from which the existence of a conspiracy can be inferred. Neither does it need be established beyond a reasonable doubt because that doctrine applies only to the issue of guilt.

 In cases cited in the 46 A.L.R.3d annotation, § 22, dealing with narcotics offenses, the technique of a narcotics transaction being in two parts, the deal with one and delivery by another, is most common. That procedure was followed by the defendant here. The evidence is more than adequate to connect the defendant and his codefendant in a joint operation. Jasch and Jevne had been long-time friends. Codefendant was present in the first bar when Jasch made the deal with the undercover agent. Codefendant left the bar a few minutes before the defendant and the undercover agent. Defendant was paid for the marijuana. A little later in the bar that defendant had designated, codefendant appeared, possessed and handed the undercover agent a lid of marijuana. All of this conduct would lead a reasonable person to believe that Jasch and Jevne were associated in an unlawful venture even without the statement of codefendant, "I have the lid of grass from Jasch." The established association between defendant and his codefendant made the statement admissible as an exception to the hearsay rule; conspiracy was present.

 It was not necessary for the trial judge to give any limiting instruction. *Kay v. United States,* 9 Cir. 1970, 421 F.2d 1007, 1011; *United States v. Buschman, supra.* The leading Supreme Court case dealing with conspiracy gives no suggestion that any limiting instruction be given before or after the receipt into evidence of the excepted declaration. *Lutwak v. United States,* 1953, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593, reh. den. 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352, nor do *Wong Sun, Bruton* and *Dutton, supra.* The statement was clearly made while the conspiracy was underway and in its furtherance, these being the other conditions of admissibility. The limiting instruction by the trial judge gave the defendant an advantage to which he was not entitled; he could not have been prejudiced.

There is no unfairness in this rule. Frequently, one defendant in making a confession after apprehension attempts to show that he is less, or his codefendant is more blameworthy, in the hope of receiving preferential treatment. When a statement is made during the course of the commission of the crime, that element is absent. There is no reliance on the faulty recollection of the codefendant; there is no assertion of a past fact. The circumstances under which the statement is made do not provide any

---

**5.** See also *Fish v. State,* Nev.1976, 549 P.2d 338. The trial judge has considerable discretion in determining the sufficiency of evidence of a joint undertaking and the purpose of the

exception should not be defeated. *United States v. James,* 5 Cir. 1975, 510 F.2d 546; *United States v. Nixon,* 1974, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (footnote 14).

reason to believe that misrepresentation of defendant's involvement is present.

■ The information charged and the evidence, if believed, proved that Jasch and Jevne jointly participated in the drug sale and they therefore could be joined under Rule 12, W.R.Cr.P.[6] Although Jasch could have been tried separately pursuant to Rule 13, W.R.Cr.P.,[7] no persuasive reason for separation is presented. The evidence to which defendant objects could have been presented against him even in a separate trial, since agency was alleged in the information. In fact, the trials would have been identical. 1 Federal Practice and Procedure, Wright, Criminal § 213, p. 430, discussing joinder of defendants under Federal Rule 13, which is identical to our Rule 12, observes:

" * * * The strongest case for ordering a joint trial is where the evidence to support the charges against the several defendants is virtually identical."

Wright cites *United States v. Fancher*, D.C. D.Conn.1960, 195 F.Supp. 634, where it is said:

" 'One might almost say that it would have been an abuse of discretion to require separate trials as to the two defendants since it would have required unnecessary repetition of substantially the same evidence.' " [Citing *Turner v. United States*, C.A. 4th, 1955, 222 F.2d 926, 932, cert. den. 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742.]

■ There must be compelling reasons for separate trials. As said with approval in *Linn v. State*, Wyo.1973, 505 P.2d 1270,

cert. den. *Lucas v. Wyoming*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. den. 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405, joint trials of defendants charged with committing the same offense are the rule rather than the exception. Joint trials serve the public interest by expediting the administration of justice, reducing docket congestion, conserving judicial time as well as that of jurors along with avoiding the recall of witnesses to duplicate their performances.

■ Severance is a matter of discretion with the trial judge and its denial is not subject to reversal unless clear abuse is shown. *United States v. Troutman*, 10 Cir. 1972, 458 F.2d 217; *United States v. Schroeder, supra*. We see not even a hint of abuse.

Affirmed.

McCLINTOCK, Justice, dissenting, with whom ROSE, Justice, joins.

The legal principle basic to the majority's disposition of this appeal is expressed in this sentence:

" * * * We hold with the majority of courts that receipt into evidence in a joint trial of one coactor's declaration implicating another coactor, under the exception to the hearsay rule that a statement by a coconspirator of a party during the course and in furtherance of the conspiracy is not hearsay, does not violate the other coactor's constitutional right of confrontation."

I construe *Bruton*[1] and subsequent decisions[2], of the United States Supreme Court

---

**6.** Rule 12 provides:

"The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

**7.** Rule 13 provides:

"If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of

counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the prosecuting attorney to deliver to the court for inspection *in camera* any statements or confessions made by the defendant which the State intends to introduce in evidence at the trial."

**1.** *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**2.** *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Migliore v. United States*, 409 F.2d 786 (5 Cir. 1969), reh. denied, cert.

and federal circuit courts as recognizing that postarrest confessions or statements of one accused of crime are not admissible against others charged with complicity in that crime. Prior to *Bruton* it was thought that in a joint trial of the accused participants the statement of one could properly be received in evidence against the declarant and that an admonition to the jury to consider the statement only as against the declarant was a sufficient substitute for codefendant's constitutional right of confrontation and cross-examination.[3] *Bruton* eliminated that notion but did not expressly or by necessary implication outlaw the use of statements of one coactor made in the course of and in furtherance of a conspiracy to commit a crime.[4] Decisions pertinent to the latter situation indicate that such statements may be received without admonition of the jury or other qualification, provided only that a conspiracy or concert of action is proved by competent evidence other than the statement itself. While the statement of the majority that "there is a world of difference between a defendant's post-conspiracy statement implicating another and a statement implicating another made during the progress of a crime jointly committed," is probably correct, I would suggest that the difference lies not in the impact that one or the other statement may have upon the jury,[5] but in recognition of a long-standing and unquestioned rule of evidence that admissions of an agent in the course of the execution of the agency are admissible as admissions of the principal. While I have personal difficulty with the concept justifying denial of a constitutional right on such a basis,[6] I accept the principle of law to be as stated by the majority and suggest only that since we are considering a rule of evidence that has the effect of denying the constitutionally-guaranteed right of confrontation, we should be completely satisfied as to its application to the facts of this case before we hold it determinative of the appeal.

My fellow justices are in agreement as to the admissibility of statements in the course of and in furtherance of a conspiracy and differ only in their application to this case, with the majority concluding as a matter of indisputable fact and law that "Jevne was the agent of Jasch" and that there was an "established association between defendant and his codefendant" so that a "conspiracy was present." My Brother Rose rejects this appellate finding as not sustained by the evidence and with considerable logic construes the trial judge's action as a finding to the contrary. I believe the majority's finding of conspiracy is justifiable only if the undenied fact that Moore ordered marijuana from Jasch, paying him therefor, and received delivery of a package containing marijuana from Jevne[7] can be said to per-

---

denied 396 U.S. 975, 90 S.Ct. 449, 24 L.Ed.2d 444; et al.

3. See *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1956).

4. "We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, * * *. There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." 391 U.S. at 128, n. 3, 88 S.Ct. at 1623.

5. *Bruton* was admittedly concerned with a postarrest confession while *Dutton v. Evans, supra*, n. 2, involved a response by an alleged participant in the crime to a third person, after arrest, and outside the presence of the defendant. I therefore do not consider the principle set forth in *Bruton* as applicable only to formal confessions.

6. See *People v. Brawley*, 1 Cal.3d 277, 82 Cal. Rptr. 161, 461 P.2d 361, 367 (1969) for citation to more authoritative criticisms of the principle.

7. The majority refer to Jevne as a "long-time friend" of Jasch's. The actual testimony, not given until both the State and Jasch had rested their cases and Jasch was being examined by Jevne's attorney in connection with the case in chief of that defendant, was that Jasch had known Jevne since the 7th or 8th grade and in answer to the question, "*Is* he a friend of yours?" said, "Yes, he *is*." (Emphasis added) The duration of the friendship is not shown. The majority also refer to the fact that Jasch and Jevne were in the same bar when the deal was made between Jasch and Moore, and that Jevne left the bar a few minutes before Jasch and Moore did. Mere association is not sufficient evidence of complicity. *Glover v. United States*, 306 F.2d 594 (10 Cir. 1962); *Panci v. United States*, 256 F.2d 308 (5 Cir. 1958); *Ong*

mit no conclusion except the existence of a conspiracy.

Such a broad conclusion troubles me and my concern is compounded by the fact that at no place in the complaint, testimony, colloquies concerning the receipt or exclusion of testimony, requests for instructions, instructions, comments on those given, and the arguments upon motions in the trial court as well as in the briefs and arguments submitted to this court, is the word "conspiracy" ever mentioned. It appears to me that a majority of this court adopt an entirely new concept of the case, never presented or argued in the court below or here, set themselves up as original triers of the fact and from those findings reach a conclusion never approached in the trial court.

As I read the authorities, it is generally held that the questions whether a conspiracy existed and whether the statement was made during the course and in furtherance thereof are preliminary questions of fact to be decided by either the trial judge or the jury before the statement is to be considered as admissible. There has been considerable conflict as to who should decide this question of admissibility and under what guidelines.[8] In the latest decision of the Federal Supreme Court which I have found dealing with the admissibility of such statements, *United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1089 (1974), I find this pertinent footnote:

> "As a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury. [Citations omitted] Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge."

*Way Jong v. United States,* 245 F.2d 392 (9 Cir. 1957). I think there is strong basis for questioning the majority's statement that: "The established association between defendant and his codefendant made the statement admissible as an exception to the hearsay rule; conspiracy was present."

8. See lengthy discussion of the alternative procedures in 40 Harv.L.Rev. 392, *Preliminary*

The effect of *Bruton* is considered by the Supreme Court of California in *People v. Brawley,* 1 Cal.3d 277, 82 Cal.Rptr. 161, 461 P.2d 361 (1969). This decision was issued prior to that of the United States Supreme Court in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), but has this to say about varying ways of trying the preliminary question of admissibility of the statement (82 Cal.Rptr. at 168, 461 P.2d at 368):

> "* * * The procedure followed in at least some of the federal courts is that the trial court alone determines the admissibility of the statements; if the trial court finds that independent of the statements there is prima facie proof of the conspiracy and that the statements were made during the conspiracy and in furtherance thereof and admits the statements, the jury need not be instructed that it also must make certain findings before it may consider the evidence against an asserted conspirator other than the declarant. [Citations omitted] Thus the California procedure contains more safeguards for a defendant than the foregoing federal procedure, and if the federal procedure does not violate the confrontation clause of the Sixth Amendment a fortiori neither does the California procedure." [9]

It is significant to me that none of the decisions which I have been able to find places the determination of the question in the appellate court, thereby permitting that court to dispose of the appeal on a basis never considered in the trial court. Reverting to *Bruton,* I note the reference therein to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in this language (391 U.S. at 128–129, 88 S.Ct. at 1624):

*Questions of Fact in Determining the Admissibility of Evidence.*

9. Under other California decisions it appears that the question whether the conspiracy had been proved was one to be decided by the jury. *People v. Brawley,* supra n. 6, 82 Cal.Rptr. at 166–167, 461 P.2d at 366–367.

" * * * We there held that a defendant is constitutionally entitled at least to have the trial judge first determine whether a confession was made voluntarily before submitting it to the jury for an assessment of its credibility. More specifically, we expressly rejected the proposition that a jury, when determining the confessor's guilt, could be relied upon to ignore his confession of guilt should it find the confession involuntary. * * * "

To me *Jackson* clearly emphasizes the importance of the preliminary determination by the trial judge of the voluntary nature of the confession. It was concerned with a New York procedure which permitted the trial judge to

"make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary." 378 U.S. at 377, 84 S.Ct. at 1781,

but if the evidence presented a fair question as to its voluntariness,

"or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge 'must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness.'" 378 U.S. at 377, 84 S.Ct. at 1781.

The following statement I consider to be most pertinent to the case at bar:

" * * * Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto,* takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use

of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution óf disputed facts upon which the voluntariness issue may depend. * * * " 378 U.S. at 390–391, 84 S.Ct. at 1788.

By footnote appended at the close of the foregoing statement the court indicated that it was not concerned with the allocation of the determination of the issue as between the trial judge, another judge or another jury, and left the states free to "allocate functions between judge and jury as they see fit." 378 U.S. at 391, 84 S.Ct. at 1789. But as I construe the opinion, the defendant was "entitled to a reliable resolution of these evidentiary conflicts" id. at 392, 84 S.Ct. at 1789, and

" * * * Jackson's trial did not comport with constitutional standards and he is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures * * *." 378 U.S. at 393, 84 S.Ct. at 1789.

The significant pertinence of this case to our problem is that the Supreme Court did not attempt to read the record and make independent determination that the confession was voluntarily made. This was a factual question which it left to be decided in either a new proceeding held for that purpose alone or by grant of a new trial, the choice of alternatives being left to the state court. I find *nothing in the opinion* indicating that it should be decided by the Court of Appeals of the state of New York or any other appellate court of that state.

As was said in *Bruton* concerning the danger of permitting evidence to go to the jury under an admonition to ignore it as to one or more of the defendants ( 391 U.S. at 135–136, 88 S.Ct. at 1627):

" * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno, supra,* there are some con-

texts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. * * * Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. * * * The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed. *Pointer v. Texas, supra* [380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923]."

Jevne's statement was not offered or received with any notion that it was consistent with the rule permitting hearsay under certain circumstances. This court, as well as others, has evinced a continuing reluctance to dispose of a case upon theories or arguments not presented in the trial court. It has shown a similar indisposition to take over fact-finding functions, continually holding that the weight of evidence and the credibility of witnesses are for the trier of the fact. It is therefore my opinion that the question of admissibility of the statement depended upon the factual answer to the factual question whether the statement was made during the course of and in furtherance of a conspiracy to violate the controlled-substances law. I therefore dissent from the affirmance of the conviction and would remand the cause for a new trial under proper procedures for the determination of the admissibility of the statement.

ROSE, Justice, separately dissenting.

In all criminal prosecutions, the accused "shall enjoy the right . . . to be confronted with the witnesses against him." Amendment VI, Constitution of the United States.

I join in the dissent of Justice McClintock. I would, however, add the following:

My opinion is based upon these facts which I believe are reflected by the record.

Ted Moore, the undercover agent, was a friend of Sam Cooper, the bartender. Moore asked Cooper to introduce him to someone who would sell him marihuana. Defendant Jasch asked Cooper if he knew someone who would buy a "lid" and Cooper told him that Moore wanted to buy. Later, Cooper saw Moore and they arranged to look up defendant Jasch for the purpose of setting up the "buy." They found him in Barquin's Bar and Cooper introduced undercover agent Moore to defendant Jasch. Moore, Jasch and Cooper went to the restroom and made a deal for Moore to buy a "lid" from Jasch—delivery to take place at another bar.

Whether codefendant Steve Jevne was in Barquin's at this time is in controversy. Cooper knew Jevne and testified that he "didn't see him in there [Barquin's], while Moore said he was present and Cooper could have seen him. Neither Moore, Cooper nor Jasch spoke to or in any way communicated with Jevne at the Barquin Bar. No witness—*at any time*—observed or overheard Jevne and Jasch communicating with each other. Moore testified that Jevne left the bar premises alone after Moore, Cooper and Jasch came out of the restroom but prior to when they left the Barquin Bar.

Some time later, Moore went to "Bernie's" bar, the appointed place for the meeting, where he found Jevne playing pool at one table and Cooper playing at another. Jasch was not there. Jevne tapped Moore to say—"I have the lid of grass from Jasch." Jevne and Moore went into the restroom and Jevne delivered the grass to Moore.

There is no evidence in this record concerning whether Jevne asked or received payment from Moore. We do not know what transpired between Moore and Jevne with respect to the transfer of the marihuana, but we do know that whatever it was cannot cast a shadow of guilt upon Jasch because, even though rebuttable, the presumption of his innocence in this context and at every other stage of the proceeding

goes with him. *Cone v. Ivinson,* 4 Wyo. 203, 33 P. 31, aff'd 4 Wyo. 203, 35 P. 933.

We said in *Stuebgen v. State,* Wyo., 548 P.2d 870, 879:

"One accused of a crime is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption applies to every element of the crime charged. *Christoffel v. United States,* 338 U.S. 84, 89, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949); 22A C.J.S. Criminal Law § 581. . . ."

Even though Jasch testified that he and Jevne were friends, there is no evidence that Jevne and Jasch had even seen each other since they attended grade school together.

The basic underlying issue in this appeal is whether it was or was not reversible error for the trial judge to refuse to separate the trials of Jevne and Jasch under Rule 13 of the Wyoming Rules of Criminal Procedure.[1]

It is to be remembered that after Moore testified about what Jevne said to him inculpating Jasch, Jasch took the stand in his own defense but Jevne, exercising his rights under the Fifth Amendment, did not testify.

The case was not tried upon criminal charges of conspiracy, but to reach the holding of the majority to the effect that error was not committed by the court's refusal to order separate trials, it was necessary for the majority to call up the law of conspiracy with its attendant exception to the hearsay rule, even though conspiracy was not considered at any stage below or here. I continue to reject, as I have in the past, this approach to decision-making because I think it is unfair to Bench, Bar and litigants for us to decide appeals upon issues which have not been raised for our consideration in the appellate process.[2] See my dissents in *Allen v. Allen,* Wyo., 550 P.2d 1137, and *Simpson v. Petroleum, Inc.,* Wyo., 548 P.2d 1.

In order to come to the majority's result, the conspiracy exception to the hearsay rule must be invoked. Before this can happen prima facie proof of the conspiracy, *absent any consideration of Jevne's statement to Moore,* must be made.[3] The rationale of the rule is well-expressed in *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680, where it was held that the declarations of one conspirator are admissible over the objection of an alleged co-conspirator who was not present when they were made, only if there is proof aliunde of a conspiracy, *"[o]therwise hearsay would lift itself by its own bootstraps to the level of competent evidence."* In my opinion, there was no such proof, notwithstanding the majority's conclusions that "Jevne

---

1. Rule 13, Wyoming Rules of Criminal Procedure, entitled "Relief from Prejudicial Joinder," provides:

 "If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the prosecuting attorney to deliver to the court for inspection *in camera* any statements or confessions made by the defendant which the State intends to introduce in evidence at the trial."

2. Justice McClintock says in his dissent:

 "Such a broad conclusion troubles me and my concern is compounded by the fact that at no place in the complaint, testimony, colloquies concerning the receipt or exclusion of testimony, requests for instructions, instructions, comments on those given, and the arguments upon motions in the trial court as well as in the briefs and arguments submitted to this court, is the word 'conspiracy' ever mentioned. It appears to me that a majority of this court adopt an entirely new concept of the case, never presented or argued in the court below or here, set themselves up as original triers of the fact and from those findings reach a conclusion never approached in the trial court."

3. See the cases at 46 A.L.R.3d 1148, commencing with § 3, p. 1157, where the text says:

 ". . . [I]t seems well settled that in order for the extrajudicial statements of one alleged conspirator to be admitted in evidence against another, *as an exception to the hearsay rule,* the existence of the conspiracy must be shown by independent evidence. . . ." [Emphasis supplied].

was the agent of Jasch" and that there was an "established association between defendant and his codefendant" so that "conspiracy was present."

Additionally, as the authorities mentioned in Justice McClintock's dissent hold, there must be an independent lower court determination of conspiracy before the hearsay exception may be utilized. As Justice McClintock demonstrates, the question of conspiracy was never even before the lower court. It follows that no such required finding of conspiracy was ever made.

The proof of a conspiracy between Jevne and Jasch is not supported by the evidence when Jevne's statement to Moore is excluded, as we all agree it must be. After this exclusion, the required proof cannot be found in the record which will serve to establish a conspiracy between the two, nor do the facts support a circumstantial evidence proof of conspiracy.

Criminal conspiracy is an agreement between two or more persons to do an unlawful act. *Goldsmith v. Cheney,* 10 Cir., 447 F.2d 624. The gravamen of the crime is the agreement. 15A C.J.S. Conspiracy § 36, pp. 726, 727–728. It is sufficient to constitute a conspiracy agreement if there is a meeting of the minds with the parties working together for a common purpose. 15A C.J.S. Conspiracy § 40, pp. 734, 735. A conspiracy may be inferred but is not to be presumed from presence at, and participation in a criminal act in the absence of a statute providing for such presumption. *State v. Winkler,* 142 W.Va. 266, 95 S.E.2d 57. In criminal conspiracy the unlawful combination, the confederacy and agreement between two or more persons, that is, the conspiracy itself, is the gist of the action, and is the corpus delicti charged, and therefore the agreement must be established to sustain a conviction. *Shannabarger v. United States,* 8 Cir., 99 F.2d 957. Absent the statement of Jevne to Moore, I do not find the necessary agreement to commit an unlawful act to have been proved.

The evidence of a conspiracy was held to be insufficient where defendant was seen before and after the declarant sold heroin to an undercover agent in *Ong Way Jong v. United States,* 9 Cir., 245 F.2d 392, where the court found that the only basis from which a conspiracy and the defendant's connection with the crime could be inferred would be through guilt by association. The court observed that just because the defendant was constantly with the declarant, who sold narcotics, it does not follow that defendant must have supplied him with the heroin. The court held that the trial judge erred in considering the extra-judicial statements of the declarant against the defendant.

In *Panci v. United States,* 5 Cir., 256 F.2d 308, evidence that the government agent observed the defendant and a declarant together, saw the defendant pass him a brown paper bag and that declarant had taken heroin from a brown paper bag and sold it to the agent was wholly insufficient to establish a conspiracy and defendant's connection with it. The court reversed because of erroneous admission of statements made by the declarants in defendant's absence. The court said that to let the verdict and judgment stand would be to hold the defendant guilty of the crime charged through guilt by association.

That the defendant was shown to be in the general area where the narcotics transaction took place between declarant and the government agent and had been seen with declarant a short time before declarant delivered heroin to the agent was insufficient independent evidence of a conspiracy to render incriminating statements made by declarant admissible against the defendant in *Glover v. United States,* 10 Cir., 306 F.2d 594, 595. The court said in its per curiam opinion:

"To render evidence of the acts or declarations of an alleged conspirator admissible against an alleged co-conspirator, the existence of the conspiracy must be shown and the connection of the latter therewith established by independent evidence. The existence of the conspiracy cannot be established against an alleged conspirator by evidence of acts or decla-

rations of his alleged co-conspirators, done or made in his absence.

"While the evidence may have been sufficient to cast suspicion upon Glover, that was not enough. Evidence which creates a mere suspicion of guilt is not enough. Guilt may not be inferred from mere association." [Footnote numbers omitted]

Where the only evidence of defendant's participation in the sale of narcotics consisted of the fact that he was present at the time of the sale, the court, in *People v. Garcia,* 201 Cal.App.2d 589, 20 Cal.Rptr. 242, held that there was insufficient evidence of the existence of a conspiracy involving the defendant to permit the introduction of extra-judicial statements of an alleged conspiracy.

Where the defendant, upon discovering the officers searching his premises, fled, throwing two capsules of heroin away in the process, and, upon arrest, admitted that a hypodermic needle and other paraphernalia found in the area were his, this did not supply the essential evidence of a conspiracy necessary to admit the statements of an alleged co-conspirator under the exception to the hearsay rule. *White v. State,* Tex. Cr.App. 1969, 451 S.W.2d 497. The declarant had been found in the defendant's apartment and had told the officers where the paraphernalia could be found. Her statements were clearly hearsay, said the court.

I would surmise that the independent proof of conspiracy here was less convincing than in any of the above cases where the courts held the proof to be insufficient to permit the invocation of the hearsay exception.

Under the facts expressed by the record here, I would have held that the trial court has effectively decided that there was no proof of conspiracy in this case, and therefore our appellate offices do not allow us to decide to the contrary.[4] It is my judgment

that we must assume, unless the contrary is clearly shown, that the trial judge, in making his rulings, knows and understands the law applicable to the issue at hand. In the instant matter, he heard the evidence and thereafter instructed the jury that—as to Jasch—declarant Moore's testimony about what Jevne said inculpating Jasch was hearsay and should be disregarded. A necessary application of the most rudimentary of the logical processes lead inevitably to the conclusion that the trial judge, in denominating the statement as *hearsay* also held that *since the statement is hearsay it therefore does not and cannot fall within any exception to the rule of hearsay.*

I would not see how evidence could be, on the one hand, classified as hearsay and, on the other hand, regarded as falling within the conspiratorial exception to the hearsay rule—all in one fell swoop. The trial judge having determined (I think properly) that there was no proof of conspiracy—a factual decision—I would have held that we have no right to second-guess him upon a fact question.

If it can be assumed that there was no proof of a conspiracy and hence the statement was in fact hearsay—as the district judge held it was—then I would hold that it was error for him not to have granted the motion for separate trials. I understand the law on this point to be that the admonition to the jury to disregard the hearsay testimony inculpating Jasch, where the right to cross-examine is unavailable, is insufficient to cleanse the jurors' minds of the poison where constitutional rights of confrontation hang in the balance. Where the same problem was in issue, the United States Supreme Court said, in *Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476:

"... Despite the concededly clear *instructions to the jury to disregard* Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint

---

**4.** When there is evidence to sustain the trial court's finding, which I believe must be inferred here, this court will not interfere with that finding unless it is clearly erroneous or so

totally against the evidence or great weight thereof as to be manifestly wrong. *Bruch v. Benedict,* 62 Wyo. 213, 165 P.2d 561.

trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional rights of cross-examination. . . ."

We held in *Dobbins v. State,* Wyo., 483 P.2d 255, that care should be taken to see that prejudice does not result from joinder. Our Rule 13 of the Rules of Criminal Procedure contemplates the possibility of and relief from such prejudicial joinder (see note 1, supra), and I would have held that such joinder was prejudicial in this case for the reasons and under the authority set out herein.

I, like Justice McClintock, would reverse for the reasons and purposes that are indicated in his dissent—namely, that there was no court finding of the existence of independent proof of a conspiracy to commit the crime with which Jasch was charged so that the hearsay exception could be properly invoked.

I would have reversed for the further reason that I find prejudicial error in not granting Jasch a trial separate from Jevne where—if the questioned statement was to be regarded as hearsay—it would be kept from the jurors where it must have indelibly traumatized their thought processes so that a fair and impartial judgment would have been humanly impossible to render.