**Joe DORADOR, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 85–109.**

Supreme Court of Wyoming.

Dec. 31, 1985.

Leonard D. Munker, State Public Defender; Martin J. McClain, Appellate Counsel; Denise Nau, Asst. Appellate Counsel, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen., Crim. Div.; John Renneisen, Sr. Asst. Atty. Gen.; Michele V.K. McKellar, Legal Intern, Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, RAPER and ROONEY, (Ret.), JJ.

BROWN, Justice.

An information dated September 11, 1984, filed in the Laramie County District Court charged appellant Joe Dorador in the first count with delivery of a controlled substance. In the second count of the information he was charged with conspiracy to deliver heroin, a controlled substance.[1]

---

1. Delivery of a controlled substance is proscribed by § 35–7–1031(a)(i), W.S.1977. The controlled substance involved here (heroin) is listed in § 35–7–1014(c)(x), W.S.1977; conspiracy is defined in § 6–1–303, W.S.1977 (June 1983 Replacement).

Appellant was convicted by a jury of both charges and given concurrent sentences. Only the conspiracy conviction is appealed.

According to appellant the issue on appeal is:

"Whether the trial court erred in admitting into evidence the tapes and transcripts containing statements of the alleged co-conspirator when there was no independent evidence of the conspiracy."

We will affirm.

Count II of the information charged appellant with conspiring with Billy Jaramillo to deliver heroin. The information further alleged that "* * * In furtherance of this conspiracy Billy Jaramillo * * * purchased a quantity of heroin from defendant which Jaramillo then delivered to a confidential informant. * * *"

In connection with the investigation by the Cheyenne Police Department that led to the arrest of appellant, the services of a confidential informant were used. The informant was equipped with a wireless microphone referred to here as a "body mike," where conversations a short distance away were recorded on cassette tape by a monitor. With the "body mike" on the informant and the receiving unit monitored by a local police officer, the latter listened to and recorded conversations concerning drug transactions between the informant and appellant on June 2, 1984; the informant and Jaramillo on June 13, 1984; and the informant and Jaramillo on June 15, 1984. These recorded conversations were admitted into evidence at trial without objection, together with transcriptions taken from the tapes. The evidence connecting appellant with Billy Jaramillo and the drug transactions on June 13 and 15, 1984, is provided through statements of Billy Jaramillo on the tapes made on those two days, and the transcripts of the two tapes.

At the close of the state's case, appellant made a motion for directed verdict as to the conspiracy count alleging the state's failure to present a prima facie case of conspiracy. At that time the trial court reserved a ruling. The motion for a directed verdict was renewed at the end of the trial

and in the alternative, appellant requested that the court strike and exclude from evidence the tapes and transcripts containing the statements of Billy Jaramillo. The motion was denied. The court found that there was sufficient independent evidence of the conspiracy to admit the statements of the co-conspirator, Billy Jaramillo. These statements were admitted into evidence under the provisions of Rule 801(d)(2)(E), Wyoming Rules of Evidence, which provides that a statement is not hearsay if:

"(2) The statement is offered against the party and is * * * (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

We have held that in order for extra-judicial statements of a co-conspirator to be admitted against a defendant under Rule 801(d)(2)(E), W.R.E., there must be prima facie evidence of a conspiracy, independent of the co-conspirator's declaration. *Grable v. State*, Wyo., 649 P.2d 663 (1982); and *Jasch v. State*, Wyo., 563 P.2d 1327 (1977).

In proving the substantive crime of conspiracy, the proof must be beyond a reasonable doubt; however, in the proof of a conspiracy, as a prerequisite to the admission of statements of an alleged co-conspirator, only a prima facie showing of conspiracy is required. It is only the prima facie showing that we are concerned with here.

In *State v. Thompson*, 273 Minn. 1, 139 N.W.2d 490 (1966), cert. denied 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966), the court defined prima facie in the context of the quantum of proof required to establish a conspiracy as a prerequisite to the admission of a co-conspirator's statement. Quoting from the Minnesota case, this court in *Jasch* said, at 1334:

"'* * * The term "prima facie" in this context is rather a nebulous one that defies exact definition. It can probably be defined only in terms of sufficient evidence to permit the trial court reason-

ably to infer that there existed a conspiracy. * * *' "

This court further said:

"* * * [A] conspiracy is usually established by circumstantial evidence and the order of proof is not significant, as long as the record as a whole shows facts from which the existence of a conspiracy can be inferred. Neither does it need be established beyond a reasonable doubt because that doctrine applies only to the issue of guilt." Id., at 1334.

We will now consider the testimony at trial to determine if there was prima facie evidence of a conspiracy independent of the co-conspirator's (Jaramillo's) declaration. In the taped recording between appellant and the informant, June 2, 1984, the conversation involved drug transactions. Appellant said, "Heroin, I like to keep it where it's moderate, you know, so [I] can get off on $40.00 you know * * *." He was asked by the confidential informant: "You dealing a lot right now?" Appellant replied: "A fair amount [inaudible] ... I arrange, but...." In that same conversation the name of Billy was mentioned. No surname was mentioned; however, there was other evidence that appellant and Billy Jaramillo were related, apparently through marriage.

On or about June 15, 1984, Billy Jaramillo delivered heroin to the confidential informant. Before the delivery the informant and Jaramillo got into Jaramillo's car and drove to a local laundromat near appellant's house. From his parked car Jaramillo walked toward appellant's house. Jaramillo was gone about ten minutes and returned with heroin which he delivered to the informant, who said he did not actually see Jaramillo enter appellant's house, it being around the corner from the parked car. However, the investigating officer monitoring the transaction between Jaramillo and the informant saw Billy Jaramillo enter appellant's residence.

Several days after the heroin transaction with Jaramillo, the informant went to appellant's residence, and at trial testified regarding the purpose of this visit.

"Q. What, if anything, occurred on that occasion?

"A. I was talking to Joe [appellant] about heroin, to see if he would sell again directly to me.

"* * * * *

"Q. Now, when you got to the Dorador [appellant] residence, did you see Joe Dorador?

"A. Yes, sir.

"Q. And where was he when you first saw him?

"A. He was coming out of his front door and going to his car.

"Q. And then did you approach him and have a conversation?

"A. Yes, sir.

"Q. And what was that conversation?

"A. I stated that I was unhappy with Billy [Jaramillo], in buying from Billy, and I wanted to deal with him, I wanted to buy through him.

"Q. And what, if anything, did Joe Dorador say in response to that?

"A. He said—he stated that he didn't really—he indicated he really didn't know me that well, and that if I wanted to continue buying heroin from him I would have to go through Billy.

"Q. And was there any other conversation about what we're talking about?

"A. I tried to push the issue and told him I wouldn't deal with Billy anymore, and that if I couldn't buy directly that I wouldn't buy. He stated that he didn't want it to happen, but that is the way it would have to be arranged."

This conversation at appellant's residence took place after the delivery of heroin by Jaramillo to the informant. However, reference was made to previous buys from appellant through Billy Jaramillo. From the testimony produced at trial the court could reasonably infer that there was a conspiracy between Jaramillo and appellant to deliver heroin on or about June 13, 1984. The state discharged its initial burden by producing evidence, independent of declarations by a co-conspirator, of a conspiracy. The state having met its initial

burden, the court properly received into evidence the tapes and transcripts of conversations between the informant and Jaramillo.[2]

The state argues that appellant failed to make a timely objection to the admission of the tapes and transcripts containing statements of Billy Jaramillo, the alleged co-conspirator, thus, did not properly preserve this issue on appeal. Appellant counters with a novel explanation why no objection was made to the admission of the tapes and transcripts. The state urges us to address the timely objection issue in the context of plain error.

In view of our disposition of the only issue raised by appellant, the matters that counsel suggest we address are unnecessary. However, we are not necessarily that convinced that appellant's objection was timely.

We hold that there was sufficient independent evidence of a conspiracy between appellant and co-conspirator Jaramillo to allow the admission of the extra-judicial statements into evidence.

Affirmed.

**2.** Sequentially, the statements of the co-conspirator were admitted into evidence before most of the independent evidence of a conspiracy was admitted. However, the order of proof is not significant. *Jasch v. State,* Wyo., 563 P.2d 1327 (1977); and *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490 (1966), cert. denied 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966). That is particularly applicable here because no objection was made to the introduction of the statements of the co-conspirator.