*445 Opinión disidente del
Juez Presidente Señor Hernández Denton.
En Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 598 (1983), rechazamos que en nuestro sistema constitucional de gobierno la Rama Ejecutiva pueda instituirse como la exclusiva protectora de la confidencialidád. En aquella oca-sión, una comisión senatorial solicitó de la Policía de Puerto Rico una serie de documentos relacionados con el notorio “Caso del Cerro Maravilla”, mas el Superinten-dente de la Policía se los negó por supuestamente ser confidenciales. Tras analizar detenidamente el asunto, esta Curia ordenó su entrega.
A pesar de las contundentes expresiones que hiciéramos en aquella ocasión, la Sentencia emitida por él Tribunal en el caso de epígrafe se aparta de forma inusitada de la norma allí establecida. De esa manera, impide que la Co-misión de Bienestar Social de la Cámara de Representan-tes investigue el manejo que el Departamento de la Fami-lia hiciera de la situación en torno a la muerte de uno de los hijos del Sr. William Elias Rodríguez. Por estimar que esta sentencia es claramente incompatible con la doctrina constitucional que por años hemos enunciado acerca del amplio poder investigativo de la Asamblea Legislativa, res-petuosamente disentimos.
I
Desde hace décadas resolvimos con suma claridad que el poder investigativo de la Asamblea Legislativa es am-plio, pero no absoluto. Véanse, e.g.: Hernándéz Agosto v. Betancourt, 118 D.P.R. 79, 81-82 (1986); Peña Clos v. Cartagena Ortiz, supra, págs. 586-587. De hecho, en Peña Clos, supra, págs. 591-592, indicamos —articulando los criterios típicos del llamado análisis tradicional— que, en *446 circunstancias como las de autos, los tribunales deben de-terminar si el uso del poder investigativo es arbitrario, si éste persigue un propósito legislativo y si no invade las garantías constitucionales de los ciudadanos. En conse-cuencia, según tal criterio, los tribunales no sopesan los intereses en conflicto, por lo que no es necesario determi-nar si pesa más el poder investigativo que el valor “prote-gido” por el reclamo de confidencialidad. Sin embargo, la sentencia del Tribunal incide al no aplicar correctamente ese estándar.
Por un lado, la sentencia resuelve incorrectamente que no procede la citación al Departamento de Justicia, pues la resolución que ordena a la Comisión de Bienestar Social investigar la muerte del hijo del Sr. Elias Rodríguez no le confiere dicha encomienda. Esta resolución dispone:
Sección 1. Se ordena a la Comisión de Bienestar Social de la Cámara de Representantes de Puerto Rico realizar una inves-tigación en torno a los procedimientos seguidos por el Depar-tamento de la Familia en el caso del niño Matthew Elias Amigo y sus hermanos.
Sección 2. La Comisión de Bienestar Social someterá a la Cá-mara de Representantes un informe contentivo de sus hallaz-gos, conclusiones y aquellas recomendaciones que estime per-tinentes, incluyendo las acciones legislativas y adminis-trativas que deban adoptarse con relación al asunto objeto de esta investigación, dentro de los sesenta (60) días, después de aprobarse esta Resolución. [R.C. 2756, 13 de septiembre de 2005, 15ta Asamblea Legislativa, 2da Sesión Ordinaria]. (Én-fasis suplido.) Apéndice de la Petición de certiorari, pág. 91.
Según la resolución citada, “[e]l lamentable deceso de[l] niño ha destapado una serie de sucesos que ponen en en-tredicho el trabajo del Departamento de la Familia y del Registro Demográfico de Puerto Rico”. Apéndice de la Pe-tición de certiorari, pág. 90. En apretada síntesis, la reso-lución expresa también que el propósito de la pesquisa es determinar si el Estado fue negligente en atender el caso del menor fallecido, si recabó la información necesaria y si *447 realizó las investigaciones de rigor sobre el bienestar del menor antes de su muerte.
De lo anterior se desprende que la resolución citada no contiene ninguna mención del Departamento de Justicia. No obstante, ello no impide que se reconozca la facultad de la Comisión de Bienestar Social para solicitarle informa-ción a dicha agencia. Como es sabido, el requisito de que toda investigación legislativa sea previamente autorizada tiene un profundo arraigo, tanto en Puerto Rico como en la jurisdicción federal. Véanse, en Puerto Rico: Hernández Agosto v. Betancourt, supra, pág. 84; Peña Clos v. Cartagena Ortiz, supra, págs. 584-587; en Estados Unidos, a modo persuasivo, Barenblatt v. United States, 360 U.S. 109 (1959); Watkins v. United States, 354 U.S. 179, 206 (1957). Sin embargo, como Barenblatt indica, dada la amplitud del poder parlamentario de investigación, rara vez se invali-dará una pesquisa si puede interpretarse razonablemente que ésta tiene apoyo en la resolución que la autoriza. Véase 1 Rotunda and Nowak, Treatise on Constitutional Law 4th Sec. 8.4(c), págs. 1011-1012 (2007).
Al negarle autoridad a la Comisión de Bienestar Social para citar al Departamento de Justicia, la sentencia del Tribunal ignora que “el apropiado significado de una auto-rización dada a un comité legislativo no puede derivarse tan sólo de los términos abstractos utilizados [en ésta] sin relacionarlos con el contenido definitorio provisto por el curso de las acciones legislativas”. Barenblatt v. United States, supra, pág. 117. De esa forma, la sentencia aludida se apega a un rigor textualista que no armoniza las distin-tas disposiciones aplicables y que no responde a la doctrina constitucional sobre la amplitud del poder investigativo de la Asamblea Legislativa.
Nótese que, por un lado, el Reglamento de la Cámara de Representantes ordena remitir a cada comisión aquellos asuntos que estén enmarcados en el ámbito de su particular competencia. Regla 11.2 del Reglamento de la Cámara de Representantes de Puerto Rico, R. de la C. 1, 15ta *448 Asamblea Legislativa, Ira Sesión Ordinaria, 2 de enero de 2005, pág. 26. Según lá Regla 13.1 del citado Reglamento, pág. 29, las comisiones permanentes. —siendo una de éstas la Comisión de Bienestar. Social— tienen el poder de “in-vestigar ... asuntos relacionados con su jurisdicción[, así como] revisar y ejercer supervisión continua sobre la im-plantación y administración de todas aquellas leyes que respondan a los asuntos incluidos en su jurisdicción”. (En-fasis suplido.) A esos efectos, se les da la facultad de solici-tar documentos y citar testigos de ser necesario para des-cargar sus funciones parlamentarias.
Por otro lado, el Reglamento de la Comisión de Bienes-tar Social dispone que dicho cuerpo tendrá autoridad para tratar asuntos relacionados con el bienestar de menores de edad. See. 2.2 del Reglamento de la Comisión de Bienestar Social. • Por último, el Reglamento de la Comisión le reco-noce facultades para evaluar y velar “por el buen funciona-miento de aquéllas agencias, departamentos, oficinas, juntas, corporaciones públicas, municipios y demás entidades del gobierno [para] determinar si [éstas] cumplen efectiva-mente con las leyes y reglamentos aprobados” sobre el bienestar social y familiar.
Tras analizar detenidamente el texto de ambos cuerpos reglamentarios, así como otras normas pertinentes, enten-demos que éstos no circunscriben la autoridad de la Comi-sión de Bienestar Social a requerir información solamente al Departamento de la Familia. Si bien es cierto que la resolución que autoriza la investigación de marras se re-fiere únicamente a dicha dependencia y al Registro Demo-gráfico, lo cierto es que le confiere la facultad para investi-gar los procesos allí realizados en el caso del menor fallecido. Sin duda, tal encomienda no limita la posibilidad de obtener información de entidades distintas al propio in-vestigado, cuando el fin sea evaluar el desempeño de éste. Claramente, una cosa es quién es el foco de la investiga-ción —el Departamento de la Familia— y otra muy dife-rente es cómo se investiga a dicha entidad.
*449 Así, pues, esta Comisión tiene poder para investigar asuntos relacionados con el maltrato infantil, además de velar por la administración de las leyes sobre las que tiene competencia. Lógicamente, la jurisdicción de la Comisión de Bienestar Social está delimitada por un criterio material, no por normas organizacionales rígidas. Es decir, la competencia de la Comisión se extiende sobre asuntos re-lacionados con la familia y la sociedad, no sólo sobre unas agencias en particular. Forzosamente, en su investigación del Departamento de la Familia, la Comisión tiene que contar con la facultad de solicitar información de otras en-tidades que puedan arrojar luz sobre la manera como la agencia bajo investigación ha descargado sus responsa-bilidades.
A una conclusión similar llegó el Tribunal Supremo federal en McGrain v. Daugherty, 273 U.S. 135 (1927), cuando en el curso de una investigación contra un ex Se-cretario de Justicia, el Senado estadounidense citó bajo apercibimiento de desacato a su hermano. El Senado in-vestigaba por qué una serie de personas implicadas en ac-tividades contrarias a la Ley Antimonopolios no habían sido acusadas por Justicia federal. Para ello, requirió la comparecencia del hermano, quien en aquel momento era presidente de un banco, y el Tribunal Supremo federal re-solvió que podía citarlo.
Ahora bien, nuestra posición no implica que la Comisión de Bienestar Social pueda requerir la producción de todo documento en poder del Departamento de Justicia. Más bien, creemos que la entrega de la información solicitada debe regirse estrictamente por un criterio de pertinencia. Si el Departamento de Justicia objeta la pertinencia de esa información, entonces le corresponderá a un tribunal de-terminar si procede su entrega. Esa evaluación judicial debe dar la debida protección a aquella información cuya divulgación pueda poner en riesgo la vida ola seguridad de confidentes, la integridad de técnicas investigativas o la facultad acusatoria exclusiva de la Rama Ejecutiva. Sin *450 embargo, excluir del todo la posibilidad de dicha entrega no es la mejor forma de armonizar los intereses en pugna,
A pesar de ello, el proceder de la sentencia del Tribunal consiste, precisamente, en concluir sin más que la Comi-sión no tiene autoridad para requerirle documentos o infor-mación al Departamento de Justicia. Por tal razón, esta-mos forzados a discrepar de ese curso de acción y, en su lugar, reconoceríamos la autoridad de la Comisión para so-licitar información a dicho Departamento, sujeto al análi-sis ulterior correspondiente. Cf. Colón Cabrera v. Caribbean Petroleum, 170 D.P.R. 582 (2007) (sobre los límites al acceso de ciudadanos a la información pública de carác-ter confidencial).
II
Por otro lado, la Sentencia del Tribunal deja sin efecto la citación cursada por la Comisión de Bienestar Social de la Cámara de Representantes al Departamento de la Fa-milia por alegadamente adolecer de vicios en su notificación. Sin duda, dicha determinación parte de la premisa de que en este caso se debió notificar a la familia Elias Rodríguez de la investigación realizada por la refe-rida Comisión. A su vez, dicha conclusión pasa por alto que la investigación aludida no está enfocada en la familia del Sr. Elias Rodríguez.
Ciertamente, la muerte del hijo menor de esta familia ha dado lugar a la investigación en cuestión. No obstante, el propio texto de la resolución que la autoriza claramente expresa que la pesquisa está dirigida al desempeño de una agencia del Ejecutivo y no a las actividades de unos ciuda-danos en particular. Es decir, en ésta no. se señala a los padres del menor fallecido como partes investigadas.
A pesar de esta innegable realidad, la sentencia del Tribunal impide a la Asamblea Legislativa examinar los do-cumentos solicitados con el fundamento de vicios en la *451 notificación. Este resultado no es cónsono con la distinción fundamental entre investigaciones legislativas realizadas a las agencias de la Rama Ejecutiva e investigaciones a personas privadas. Conforme a ello, en Peña Clos v. Cartagena Ortiz, supra, resolvimos que si la investigación se dirige a una agencia o a un funcionario público, los tribuna-les deben ser cuidadosos al intervenir con la pesquisa legislativa. De ordinario, los motivos de la investigación no pueden ser cuestionados en los tribunales. Más bien, se considera que la intervención judicial es apropiada, única-mente, cuando se han usurpado incuestionablemente las facultades de otra rama de gobierno.
Sabemos que en Rullán v. Fas Alzamora, 166 D.RR. 742 (2006), se le impuso a la Rama Legislativa un requisito de notificación en el contexto del pedido de la copia de las planillas contributivas de un individuo investigado por una comisión legislativa. Sin embargo, como hemos visto, el caso de autos nos presenta una cuestión esencialmente distinta. La familia Elias no es objeto de investigación al-guna por parte de la Comisión de Bienestar Social. En cambio, el licenciado Rullán sí era parte en la investigación que realizaba la comisión senatorial. Por eso, en ese caso la notificación estaba dirigida más a garantizarle un debido proceso de ley al licenciado Rullán, por ser objeto de una investigación sobre alegados actos de corrupción relaciona-dos con la Corporación de Puerto Rico para la Radiodifu-sión Pública.
De otro lado, hemos sido consistentes en expresar que la cuestión a dilucidar cuando del derecho a la intimidad se trata, es “si la persona tiene un derecho razonable a abri-gar, donde sea, dentro de las circunstancias del caso espe-cífico, la expectativa de que su intimidad se respete”. Pueblo v. Lebrón, 108 D.P.R. 324, 331 (1979). Así, pues, resolvimos en E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983), que los usuarios de la Telefónica no albergaban una expec-tativa razonable de intimidad sobre la información de sus *452 números telefónicos, aunque firmaran un acuerdo de pri-vacidad con la empresa. Intereses de superior jerarquía, como una investigación realizada por el Departamento de Justicia sobre prácticas monopolísticas, rebasaban el limi-tado derecho de intimidad de aquellos usuarios.
Además, en Pueblo v. Domínguez Fraguada, 105 D.P.R. 537 (1977), expresamos que un acusado no puede oponer un derecho de intimidad sobre fotografías que obran en los expedientes del Departamento de Transportación y Obras Públicas para evitar que se le identifique mediante ellas en una investigación criminal. Véase, también, Pueblo v. Yip Berrios, 142 D.P.R. 386 (1997). A su vez, en Pueblo v. Loubriel, Suazo, 158 D.P.R. 371 (2003), resolvimos que no se infringe la expectativa de intimidad que posee una persona sobre sus cuentas bancarias cuando el Estado procura in-formación sobre dónde fue depositado un cheque que el propio Gobierno emitió. Es evidente que nuestra negativa a reconocer una amplia aplicación del derecho de intimidad en los casos citados se fundamenta en el entendido de que la información en cuestión no fue generada por el individuo o fue entregada sin reservas por éste al Estado. Véanse, a modo comparativo, United States v. Dionisio, 410 U.S. 1, 14 (1973) y Katz v. United States, 389 U.S. 347, 351-352 (1967).
De esta forma, cuando una persona entrega de manera voluntaria cierta información al Gobierno, no puede recla-mar un derecho de intimidad absoluto sobre ésta. Tampoco puede argumentar que tiene un interés de control absoluto sobre la información recopilada legítimamente por el Es-tado en el curso de una investigación. En síntesis, cuando se ha perdido determinado interés de privacidad, ya no puede invocarse la protección del derecho a la intimidad. Interpretar la norma pautada en Rullán v. Fas Alzamora, supra, de forma incompatible con lo señalado, implicaría dar un giro rotundo en nuestra doctrina sobre registros y allanamientos. Véase E.L. Chiesa Aponte, Derecho Proce- *453 sal Penal: Etapa Investigativa, San Juan, Pubs. J.T.S., 2006, Sec. 4.18(c), págs. 251-253 (sobre algunas de las im-plicaciones de la norma pautada en Rullán).
Más aún, reconocer al Ejecutivo como el único custodio de la confidencialidad de los documentos es anatema a los principios democráticos que inspiran un sistema de go-bierno en el que las distintas funciones gubernamentales son desempeñadas por tres poderes de igual rango y categoría. Véase Peña Clos v. Cartagena, Ortiz, supra, pág. 598. En este caso, existen otros medios para evitar la divulgación pública de la información solicitada por la Comi-sión de Bienestar Social.
Por ejemplo, en el dictamen recurrido, el Tribunal de Apelaciones identificó una excepción a la norma de confi-dencialidad invocada por el Estado. La propia Ley para el Bienestar y la Protección Integral de la Niñez, 8 L.P.R.A. sec. 446e, permite el acceso a documentos confidenciales cuando se realiza una investigación “bona fide”. Las nor-mas cautelares establecidas en esa ley, vistas a la luz del poder constitucional de investigación que posee la Asam-blea Legislativa, protegen adecuadamente los intereses que aduce el Gobierno para negar la información solicitada. Además, no podemos olvidar que esos intereses no son exclusivos de la Rama Ejecutiva.
En esa dirección, la Cámara de Representantes ha esta-blecido un procedimiento dirigido a salvaguardar la confi-dencialidad de documentos sensitivos recibidos por sus co-misiones en el curso de investigaciones legislativas. Así, el Reglamento de la Cámara de Representantes dispone:
Todo documento que se reciba bajo un reclamo justificado de confidencialidad no formará parte de los expedientes públicos de la Comisión que los reciba, excepto cuando medie decisión del Cuerpo en contrario. Al finalizar los trabajos de la Comi-sión que conllevaron la presentación de documentos confiden-ciales, estos serán de inmediato devueltos a su lugar de origen o destruidos, según se acuerde con su dueño o custodio legal, *454 observando en todo momento aquellos protocolos que mejor garanticen la protección de los derechos involucrados. (Enfasis suplido.) Regla 13.4 del Reglamento de la Cámara de Repre-sentantes, supra.
De la disposición transcrita surge claramente que la Cá-mara de Representantes posee un sistema adecuado para proteger el derecho de intimidad de ciudadanos como los miembros de la familia Elias. Por lo tanto, el derecho a la intimidad tampoco puede ser el fundamento para negarle a la Comisión de Bienestar Social el acceso a los documentos que necesita para concretar su investigación. Claramente, en estas circunstancias, resulta innecesario “advertir” al ciudadano sobre un “registro”, cuando el propio Estado ya posee la información que se pretende proteger.
Por último, debe quedar claro que no somos insensibles a los riesgos que puede conllevar la entrega de la informa-ción en cuestión. Sin embargo, nos rehusamos a creer que esa “entrega” significa necesariamente la “divulgación” de los datos solicitados. De ser ese último el caso, llegado el momento cuando se presente una clara lesión a la integri-dad y dignidad de la familia Elias, entonces nos correspon-derá fijar la responsabilidad de rigor. No obstante, en este momento, cualquier acción que tomemos no tendría mayor efecto que intentar prevenir la ocurrencia de un daño re-moto y especulativo a costa del amplio poder investigativo de una de las ramas que componen la democracia puertorriqueña. Por ende, disentimos.